LAWRENCE J. HILTON (STATE BAR NO. 156524)
lhilton@hewittoneil.com
JENNIFER SUN (STATE BAR NO. 238942)
HEWITT & O'NEIL LLP
19900 MacArthur Boulevard
Suite 1050
Irvine, California 92612
Telephone: (949) 798-0500
Facsimile: (949) 798-0511

Attorneys for Plaintiffs
STRIKEPOINT TRADING, LLC and
OPTIONEER, LLC

FILED

2008 SEP 10 PM 3: 24

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
SANTA ANA
BY: ___

ORIGINAL

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STRIKEPOINT TRADING, LLC, a California limited liability company; and OPTIONEER, LLC, a Nevada limited liability company; | Case No. SACV 07-1073 DOC (MLGx) |
| Plaintiffs, | **FIRST AMENDED COMPLAINT FOR:** |
| v. | **(1) VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. § 1030;** |
| AIMEE ELIZABETH SABOLYK, an individual dba INNOVATIVE OPTION STRATEGIES, GLOBAL ASSET ADVISORS, LLC an Illinois limited liability company; and JOHN MATTHEW MONDRAGON, an individual, | **(2) BREACH OF CONTRACT (CONFIDENTIALITY AND NONDISCLOSURE AGREEMENT--SABOLYK);** |
| | **(3) BREACH OF CONTRACT (CONFIDENTIALITY AND NONDISCLOSURE AGREEMENT--MONDRAGON);** |
| Defendants | **(4) COMMON LAW UNFAIR COMPETITION;** |
| | **(5) UNFAIR BUSINESS PRACTICES;** |
| | **(6) MISAPPROPRIATION OF TRADE SECRETS;** |
| | **(7) TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONSHIP;** |
| | **(8) TRADE LIBEL;** |
| | **(9) INJUNCTIVE RELIEF** |
| | **JURY TRIAL DEMANDED** |

H&O: #61210 v1

FIRST AMENDED COMPLAINT

1   Plaintiffs STRIKEPOINT TRADING, LLC ("StrikePoint") and

2   OPTIONEER, LLC ("Optioneer") (StrikePoint and Optioneer are collectively

3   referred to herein as "Plaintiffs"), for their causes of action against Defendants

4   AIMEE ELIZABETH SABOLYK ("Sabolyk"), an individual doing business as

5   INNOVATIVE OPTION STRATEGIES, GLOBAL ASSET ADVISORS, LLC

6   ("GAA") and JOHN MATTHEW MONDRAGON ("Mondragon") (Sabolyk, GAA

7   and Mondragon are collectively referred to as "Defendants"), allege as follows:

8                          **JURISDICTION AND VENUE**

9         1.     This is a civil action for, among other things, damages and injunctive

10  relief arising from violations of the Computer Fraud And Abuse Act, 18 U.S.C. §

11  1030.  This Court therefore has jurisdiction over Plaintiffs' claims pursuant to 28

12  U.S.C. § 1331.  Further, as alleged in Paragraphs 2 through 4, below, there is

13  complete diversity of citizenship between Plaintiffs and Defendants.  The amount in

14  controversy exceeds the sum of $75,000, exclusive of interest and costs.  This Court

15  therefore has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. §§ 1332(a).

16  Plaintiffs are informed and believe and, on that basis, allege that a substantial

17  portion of the events complained of herein occurred in this federal judicial district.

18        2.     As alleged more fully below, Plaintiff StrikePoint and defendants

19  Sabolyk and Mondragon entered into written agreements in this District, which

20  agreements are the basis for several of the claims alleged herein.  Further, Plaintiffs

21  are informed and believe and, on that basis, allege that GAA interfered with the

22  contracts between StrikePoint and Sabolyk and Mondragon with the knowledge and

23  intent to cause injury within this District.  Venue is therefore proper pursuant to 28

24  U.S.C §§ 1391.

25        3.     Plaintiff StrikePoint is a limited liability company organized and

26  existing under the laws of California, having its principal place of business in the

27  County of Orange, State of California.  All of StrikePoint's members are citizens of

28  The State of California or are Australian citizens.

1     4.    Plaintiff Optioneer is a limited liability company organized and existing

2 under the laws of Nevada, having its principal place of business in the State of Utah.

3 All of Optioneer's members are citizens of The State of California or are Australian

4 citizens.

5     5.    Plaintiffs are informed and believe and, on that basis, allege that

6 Defendant Sabolyk is an individual whose domicile is within the State of Illinois.

7     6.    Plaintiffs are informed and believe and, on that basis, allege that

8 Defendant Mondragon is an individual whose domicile is within the State of Illinois.

9     7.    Plaintiffs are informed and believe and, on that basis, allege that

10 Defendant GAA is a limited liability company organized and existing under the laws

11 of the State of Illinois, and that GAA does not have any members that are citizens of

12 California.

13                **FACTS COMMON TO ALL COUNTS**

14     8.    Plaintiffs reallege and incorporate herein by this reference as though set

15 forth in full each and every allegation contained in Paragraphs 1 through 7,

16 inclusive.

17     9.    Plaintiff StrikePoint is a commodity futures and options brokerage

18 firm. StrikePoint is a member of the National Futures Association ("NFA") as an

19 Introducing Broker, and also is registered with the Commodity Futures Trading

20 Commission. StrikePoint was formed in 2004 by its members, Optioneer and

21 Altavest Worldwide Trading, Inc. ("Altavest"). StrikePoint's primary business is

22 acting as a broker for customers of Optioneer.

23     10.    Optioneer's clients are subscribers to a specialized, proprietary program

24 trading strategy for trading in the options and futures markets (the "Optioneer

25 Program"). The Optioneer Program combines technology and a proprietary strategy

26 to offer retail customers an innovative risk management program regarding selling

27 option premium, along with unique trade execution capabilities. Through

28 innovative training and the use of Optioneer's proprietary methodologies and data,

1  customers are better able to manage speculative risk and generate income in various

2  market conditions.  The Optioneer strategy has been developed for over 25 years,

3  system tested for 7 years and user validated for 5 years.  Significant resources have

4  gone into making the Program user friendly and simple for individuals without

5  industry or financial training to use effectively.

6       11.    The Optioneer Program uses proprietary formulas and algorithms to

7  give users valuable indications that identify trade entry and exit points.  These tried

8  indicators are calculated daily by Optioneer and provided to customers through an

9  automated, easy-to-use, web-based system, which in turn enables simplified and

10  expedited execution of customer trades.  The Optioneer Program uses proprietary

11  technology that has been formulated to give the user valuable indicators that identify

12  trade entry and exit points including a probability or "P" Factor, which calculates

13  the probability of the market being outside the Strike price by contract expiration

14  date.  The Optioneer Program also allows evaluation of market risk and volatility.

15            **Sabolyk's Employment and Non-Disclosure Obligations**

16       12.    On or about October 13, 2003, Sabolyk joined Altavest as an

17  administrative assistant/broker assistant.  Plaintiffs are informed and believe and, on

18  that basis, allege that at the time Sabolyk joined StrikePoint, she had only recently

19  graduated from college, had not been employed in any prior professional position,

20  and had no experience in futures and/or options trading.  In early 2004, Sabolyk was

21  considered for a promotion to the position of broker.  As a condition of that

22  promotion, which would substantially increase Sabolyk's access to confidential

23  information of Altavest, Optioneer and their clients, Sabolyk was required to sign a

24  Non-Disclosure Agreement, which she executed on February 27, 2004.  The

25  February 27, 2004 agreement specifically identifies "the identity of customers" and

26  "technical data" regarding Altavest's trading services among the information that is

27  to be treated as confidential.  The confidentiality obligation expressly survives

28  termination of employment.

1    13.    The week after she executed the Non-Disclosure Agreement, Sabolyk
2 was formally promoted to the position of broker.

3    14.    In June, 2004, StrikePoint was formed, and all of Optioneer's member
4 accounts were transferred from Altavest to StrikePoint. At the same time, Sabolyk's
5 NFA broker registration was amended to show that she was also a registered
6 Associated Person (broker) of StrikePoint. Sabolyk continued to be bound by the
7 confidentiality restrictions imposed by her agreements with Altavest.

8    15.    On March 16, 2006, Sabolyk signed a revised Confidentiality/Non-
9 Disclosure Agreement wherein (a) she expressly acknowledged that she had access
10 to confidential information, including "futures and futures options trading
11 techniques and procedures," "client/account lists" and "client/account information,"
12 and (b) she agreed to strictly maintain the confidentiality of the information and not
13 to use it for any purposes other than her employment with StrikePoint.

14    16.    Sabolyk's employment with StrikePoint was terminated effective as of
15 June 1, 2007.

16    17.    Plaintiffs are informed and believe and, on that basis, allege that
17 Sabolyk accepted employment as a broker with GAA either prior to the termination
18 of her employment with StrikePoint, or shortly thereafter. Plaintiffs are further
19 informed and believe and, on that basis, allege that GAA is engaged in substantially
20 the same business as Plaintiffs, i.e., trading commodity futures and options.

21    18.    In addition to her employment with GAA, Sabolyk has registered with
22 the NFA a sole proprietorship she operates under the name "Innovative Option
23 Strategies." Plaintiffs are informed and believe and, on that basis, allege that to the
24 extent any option trading strategies Sabolyk employs are "innovative," the
25 innovations were misappropriated from StrikePoint and Optioneer.

26    **Mondragon's Employment and Non-Disclosure Obligations**

27    19.    On or about July 11, 2005, Mondragon joined StrikePoint as a broker.
28 On March 16, 2006, Mondragon signed a Confidentiality/Non-Disclosure

1   Agreement wherein (a) he expressly acknowledged that he had access to

2   confidential information, including "futures and futures options trading techniques

3   and procedures," "client/account lists" and "client/account information," and (b) he

4   agreed to strictly maintain the confidentiality of the information and not to use it for

5   any purposes other than his employment with StrikePoint.

6       20.   Mondragon's employment with StrikePoint was terminated effective as

7   of January 7, 2008.

8       21.   On or about January 22, 2008, Mondragon accepted employment with

9   GAA.  Plaintiffs are further informed and believe and, on that basis, allege that

10  GAA is engaged in substantially the same business as Plaintiffs, i.e., the business of

11  trading commodity futures and options, and that Mondragon's job duties at GAA are

12  substantially similar to those he performed while at StrikePoint.

13      22.   Shortly after leaving StrikePoint, Mondragon attended a social

14  gathering with several StrikePoint brokers.  At that meeting, Mondragon boasted

15  that he would be taking a certain client or clients to his new firm.  At least one of the

16  clients mentioned by Mondragon at that meeting subsequently closed his StrikePoint

17  account and opened an account with GAA, and numerous other StrikePoint clients

18  that were assigned to Mondragon while he was employed as a StrikePoint broker

19  have closed their StrikePoint accounts and have opened accounts with GAA.

20                   **FIRST CAUSE OF ACTION**

21         **(Violation of CFAA by StrikePoint Against Defendant Sabolyk)**

22      23.   Plaintiffs reallege and incorporate herein by this reference as though set

23  forth in full each and every allegation contained in paragraphs 1 through 22,

24  inclusive.

25      24.   As part of her employment with Plaintiff StrikePoint, Sabolyk had

26  access to one or more computers (each a "Protected Computer") that were used in

27  interstate and/or international commerce.  The Protected Computers allowed

28  Sabolyk to access trade secret information of both StrikePoint and Optioneer in

1    order to carry on her duties as a StrikePoint broker.  Sabolyk's access to the

2    Protected Computers was conditioned on her compliance with the written

3    confidentiality agreements.

4         25.    Sabolyk was not authorized to access the Protected Computers for any

5    purposes other than those necessary for her to carry on her duties as a broker.

6    Sabolyk was expressly not permitted to access the Protected Computers for purposes

7    of transferring to her personal accounts or obtaining for her personal benefit any of

8    the proprietary and trade secret information on the Protected Computers' files.

9         26.    Sabolyk exceeded her authority to access the Protected Computers by

10   knowingly and intentionally accessing the Protected Computers to transfer

11   proprietary and trade secret information on the Protected Computers' files to her

12   personal accounts.  Specifically, Sabolyk transferred StrikePoint's client information

13   to her personal e-mail account.  Sabolyk also downloaded StrikePoint's client

14   information to separate files unrelated to her duties as a broker; StrikePoint is

15   informed and believes and, on that basis, alleges that Sabolyk downloaded the client

16   information in order to facilitate the transfer to her personal files and/or to third

17   parties, including GAA.

18        27.    As a direct and proximate result of the actions of Sabolyk as alleged

19   herein, StrikePoint and Optioneer were injured during the one-year period prior to

20   commencement of this action in an amount aggregating more than $5,000.

21                        **SECOND CAUSE OF ACTION**

22          **(Breach of Contract by StrikePoint Against Defendant Sabolyk)**

23        28.    Plaintiffs reallege and incorporate herein by this reference as

24   though set forth in full each and every allegation contained in paragraphs 1 through

25   18 and 24 through 27, inclusive.

26        29.    Shortly after Sabolyk's employment with StrikePoint was terminated,

27   StrikePoint discovered that Sabolyk had violated the terms of her confidentiality

28   agreements by transferring StrikePoint's client information to her personal e-mail

H&O: #61210 v1

1  account.  Sabolyk also downloaded StrikePoint's client information to separate files
2  unrelated to her duties as a broker; StrikePoint is informed and believes and, on that
3  basis, alleges that Sabolyk downloaded the client information in order to facilitate
4  the transfer to her personal files and/or to third parties, including GAA.

5      30.     Plaintiffs are informed and believe and, on that basis, allege that since
6  joining Defendant GAA, Sabolyk has used StrikePoint's confidential information to
7  solicit clients for her new employer, GAA, and has used proprietary trading
8  information and strategies to place trades for clients of GAA.

9      31.     Plaintiff is informed and believes and, on that basis, alleges that since
10  forming Innovative Option Strategies, Sabolyk has used StrikePoint's confidential
11  information to solicit clients for her personal benefit, and has used proprietary
12  trading information and strategies to place trades for her clients.

13      32.     The actions of Sabolyk as alleged above are in direct breach of her
14  contractual obligations to maintain the confidentiality of StrikePoint's proprietary
15  and confidential information.

16      33.     StrikePoint has performed all obligations required of it under the
17  confidentiality agreements, except for such obligations as have been excused by
18  Sabolyk's breach.

19      34.     As a direct and proximate result of Sabolyk's breach of the
20  confidentiality agreements, StrikePoint has been damaged in an amount exceeding
21  $75,000, exclusive of interest and costs, to be proven at trial.

22      35.     By reason of the acts of Sabolyk alleged herein, StrikePoint has
23  suffered, is suffering, and will continue to suffer, irreparable damage unless
24  StrikePoint is granted, preliminarily during the pendency of this action, and
25  thereafter permanently, an injunction preventing Sabolyk from continuing her
26  unlawful breach of the confidentiality agreements with StrikePoint.

27

28

## THIRD CAUSE OF ACTION

### (Breach of Contract by StrikePoint Against Defendant Mondragon)

36.   Plaintiffs reallege and incorporate herein by this reference as though set forth in full each and every allegation contained in paragraphs 1 through 11 and 19 through 22, inclusive.

37.   Plaintiffs are informed and believe and, on that basis, allege that since joining Defendant GAA, Mondragon has used StrikePoint's confidential information to solicit clients for his new employer, GAA, and has used proprietary trading information and strategies to place trades for clients of GAA.

38.   The actions of Mondragon as alleged above are in direct breach of his contractual obligations to maintain the confidentiality of StrikePoint's proprietary and confidential information.

39.   StrikePoint has performed all obligations required of it under the confidentiality agreements, except for such obligations as have been excused by Mondragon's breach.

40.   As a direct and proximate result of Mondragon's breach of the confidentiality agreements, StrikePoint has been damaged in an amount exceeding $75,000, exclusive of interest and costs, to be proven at trial.

41.   By reason of the acts of Mondragon alleged herein, StrikePoint has suffered, is suffering, and will continue to suffer, irreparable damage unless StrikePoint is granted, preliminarily during the pendency of this action, and thereafter permanently, an injunction preventing Mondragon from continuing his unlawful breach of the confidentiality agreements with StrikePoint.

## FOURTH CAUSE OF ACTION

### (Common Law Unfair Competition by Plaintiffs Against All Defendants)

42.   Plaintiffs reallege and incorporate herein by this reference as though set forth in full each and every allegation contained in Paragraphs 1 through 41, inclusive.

1     43.    Plaintiffs have invested substantial time, spanning a period of many

2 years, money and resources developing their client base, their customer list, their

3 trading strategies and related materials.

4     44.    Defendants, in violating the restrictions set forth in the confidentiality

5 agreements or in assisting Sabolyk and Mondragon in such violations, have

6 appropriated Plaintiffs' proprietary information, including the customer lists, client

7 information and trading strategies, at little or no cost and without any significant

8 investment of time.

9     45.    As a direct and proximate result of Defendants' misappropriation of

10 Plaintiffs' proprietary information, Plaintiffs have been damaged in an amount in

11 excess of $75,000, exclusive of interest and costs, to be proven at trial.

12                          **FIFTH CAUSE OF ACTION**

13         **(Unfair Business Practices by Plaintiffs Against All Defendants)**

14     46.    Plaintiffs reallege and incorporate herein by this reference as though set

15 forth in full each and every allegation contained in Paragraphs 1 through 45,

16 inclusive.

17     47.    The actions of Defendants as alleged herein constitute an unlawful,

18 unfair or fraudulent business practice within the meaning of California Business &

19 Professions Code section 17200.

20     48.    By reason of the acts of Defendants alleged herein, Defendants have

21 wrongfully obtained economic benefits, at the direct expense of Plaintiffs and to

22 Plaintiffs' detriment, in an amount in excess of $75,000, exclusive of interest and

23 costs, to be proven at trial.  Plaintiffs are entitled to restitution of the benefits

24 Defendants wrongfully obtained through their unlawful, unfair or fraudulent

25 business practices as alleged hereinabove.

26     49.    By reason of the unlawful, unfair or fraudulent business practices of

27 Defendants alleged herein, Plaintiffs have suffered, are suffering, and will continue

28 to suffer, irreparable damage unless Plaintiffs are granted, preliminarily during the

1 | pendency of this action, and thereafter permanently, an injunction preventing
2 | Defendants from continuing their unlawful, unfair and/or fraudulent business
3 | practices.

4 | ### SIXTH CAUSE OF ACTION

5 | **(Misappropriation of Trade Secrets – Uniform Trade Secrets Act**
6 | **by Plaintiffs Against All Defendants)**

7 | 50. Plaintiffs reallege and incorporate herein by this reference as though set
8 | forth in full each and every allegation contained in Paragraphs 1 through 41,
9 | inclusive.

10 | 51. Plaintiffs' clients are investors in a highly-specialized, narrow
11 | investment segment, namely, traders of index and futures options. As such,
12 | Plaintiffs' trading strategies, client list and client information derive significant
13 | independent economic value from not being generally known to the public or to
14 | others (such as Defendant GAA) who can derive economic value from its disclosure
15 | or use.

16 | 52. Plaintiffs have made reasonable efforts to maintain the secrecy of the
17 | client list and client information, which efforts include, without limitation, requiring
18 | Sabolyk, Mondragon (and all of StrikePoint's brokers) to sign written
19 | confidentiality and non-disclosure agreements restricting the use and dissemination
20 | of the trading strategies, client lists and client information.

21 | 53. In violation of the written confidentiality and non-disclosure
22 | agreements Sabolyk and Mondragon were bound by, and with the intent of
23 | benefiting from Plaintiffs' proprietary information, Sabolyk, Mondragon and GAA
24 | have misappropriated the trading strategies, client list (in whole or in part) and other
25 | client information in order to induce clients to leave StrikePoint for GAA and profit
26 | at the expense of StrikePoint and Optioneer.

27 | 54. At the time Sabolyk and Mondragon disclosed the proprietary
28 | information to GAA or used the proprietary information to benefit GAA, GAA and

H&O: #61210 v1
11
FIRST AMENDED COMPLAINT

1  its principals knew or had reason to know that Sabolyk and Mondragon had
2  acquired the proprietary information under false pretenses and/or by other improper
3  means and that Plaintiffs had neither expressly nor impliedly consented either to the
4  disclosure of, or use of which Defendants intended.

5       55.   As a direct and proximate result of Defendants' misappropriation of
6  Plaintiffs' proprietary information, Plaintiffs have been damaged in an amount in
7  excess of $75,000, exclusive of interest and costs, to be proven at trial.

8       56.   Plaintiffs are informed and believe and, on that basis, allege that
9  Defendants' misappropriation of Plaintiffs' trade secrets was willful and malicious
10 such that exemplary damages may be awarded to Plaintiffs and against Defendants
11 as provided in California Civil Code section 3426.3.

12                     **SEVENTH CAUSE OF ACTION**
13        **(Tortious Interference by StrikePoint Against Defendant GAA)**

14      57.   Plaintiffs reallege and incorporate herein by this reference as though set
15 forth in full each and every allegation contained in paragraphs 1 through 56,
16 inclusive.

17      58.   Defendant GAA, with knowledge that Sabolyk and Mondragon were
18 bound by written non-disclosure agreements with StrikePoint, encouraged and
19 induced Sabolyk and Mondragon to breach their agreements with StrikePoint so that
20 GAA could profit by using StrikePoint's proprietary client list, client account
21 information and Optioneer's proprietary trading strategies.

22      59.   The efforts of GAA were successful in that Sabolyk and Mondragon
23 did, in fact, breach their agreements with StrikePoint for the purposes intended by
24 GAA.

25      60.   As a direct and proximate result of the actions of GAA as alleged
26 hereinabove, StrikePoint has been damaged in an amount in excess of $75,000,
27 exclusive of interest and costs, to be proven at trial.

28

1   61.    The actions of GAA as alleged herein were done with malice and

2   oppression such that exemplary damages may be awarded under California Civil

3   Code section 3294 for the sake of example and by way of punishing Defendant

4   GAA.

5   ## EIGHTH CAUSE OF ACTION

6   **(Trade Libel by StrikePoint Against Defendant Sabolyk)**

7   62.    Plaintiffs reallege and incorporate herein by this reference as though set

8   forth in full each and every allegation contained in paragraphs 1 through 18 and 24

9   through 35, inclusive.

10   63.    After leaving her employment with StrikePoint and joining GAA,

11   Sabolyk had many communications by telephone and electronic mail with

12   StrikePoint clients wherein she attempted to persuade them to move their accounts

13   to GAA.  StrikePoint is informed and believes and, on that basis, alleges that on or

14   around August 24, 2007, Sabolyk received an e-mail message from a StrikePoint

15   client, Timothy Smith, wherein Smith asserted that StrikePoint had placed

16   "unauthorized trades."  The statement in Mr. Smith's August 24, 2007 e-mail was

17   disparagingly false.

18   64.    During the same period of time that Sabolyk was communicating with

19   Mr. Smith, she was also communicating with Larry Meadows, another StrikePoint

20   client, and was attempting to persuade Mr. Meadows to move his account from

21   StrikePoint to GAA.  StrikePoint is informed and believes and, on that basis, alleges

22   that on or about September 5, 2007, Sabolyk sent an e-mail message to Mr.

23   Meadows wherein she re-published Smith's defamatory statement. to Meadows.

24   65.    StrikePoint is informed and believes and, on that basis, alleges that

25   Sabolyk re-published the defamatory statement in the hopes that it would disparage

26   the services of StrikePoint and help to persuade Meadows to move his account from

27   StrikePoint to GAA.  Meadows subsequently closed his StrikePoint account and

28

1   StrikePoint is informed and believes and, on that basis, alleges that Meadows
2   subsequently moved his account to GAA.

3       66.     StrikePoint is informed and believes and, on that basis, alleges that
4   Sabolyk made no effort to verify or investigate the substance of the defamatory
5   statement made by Smith, but instead re-published it to a StrikePoint client either
6   knowing that it was disparagingly false or with reckless disregard to its falsity.

7       67.     As a direct and proximate result of the actions of Sabolyk as alleged
8   hereinabove, StrikePoint has been damaged in an amount to be proven at trial.

9       68.     The actions of Sabolyk as alleged herein were done with malice and
10  oppression such that exemplary damages may be awarded under California Civil
11  Code section 3294 for the sake of example and by way of punishing Defendant
12  Sabolyk.

### **NINTH CAUSE OF ACTION**

**(Injunctive Relief Against All Defendants)**

15      69.     Plaintiff realleges and incorporates herein by this reference as though
16  set forth in full each and every allegation contained in paragraphs 1 through 22 and
17  28 through 56, inclusive.

18      70.     By reason of the acts of Defendants alleged herein, Plaintiffs have
19  suffered, are suffering, and will continue to suffer, irreparable damage unless
20  Plaintiffs are granted, preliminarily during the pendency of this action, and
21  thereafter permanently, an injunction preventing Defendants from continuing their
22  unlawful actions.

23      71.     Plaintiffs therefore request that this Court enter a preliminary injunction
24  enjoining Defendants and their agents, servants, employees, members, limited
25  partners, attorneys, parent, subsidiary, and related companies and all persons acting
26  for, with, by, through, or under him from continuing to use Plaintiffs' proprietary
27  client list and client account information and trading strategies.

28

H&O: #61210 v1

FIRST AMENDED COMPLAINT

1    72.    Plaintiffs further request that upon trial of this cause, that the

2    preliminary injunction be made into a permanent injunction so enjoining

3    Defendants.

4                              **PRAYER FOR RELIEF**

5        **WHEREFORE**, Plaintiff prays for relief as follows:

6        1.    On the First, Second, Third and Fourth Causes of Action, for

7    compensatory damages in an amount to be proven at trial;

8        2.    On the Fifth Cause of Action, for disgorgement and restitution of

9    wrongfully obtained profits in an amount to be proven at trial, for preliminary and

10   permanent injunctive relief and for reasonable attorneys' fees;

11       3.    On the Sixth, Seventh and Eighth Causes of Action, for compensatory

12   and punitive damages in an amount to be proven at trial, and for preliminary and

13   permanent injunctive relief;

14       4.    On the Ninth Cause of Action, for preliminary and permanent

15   injunctive relief;

16       5.    On all causes of action, for costs of suit; and;

17       6.    For such other and further relief as the Court deems just and proper.

18

19   DATED:  August 12, 2008        HEWITT & O'NEIL LLP
                                    LAWRENCE J. HILTON
20                                  JENNIFER SUN

21

22                                  By: _____
                                         Lawrence J. Hilton
23
                                    Attorneys for Plaintiffs STRIKEPOINT
24                                  TRADING, LLC, and OPTIONEER, LLC

25

26

27

28

H&O: #61210 v1                          15
                              FIRST AMENDED COMPLAINT

1

## DEMAND FOR JURY TRIAL

2      Plaintiff hereby demands a jury trial on all issues triable by right of jury as

3  provided by Federal Rule of Civil Procedure 38.

4  DATED:  August 12, 2008          HEWITT & O'NEIL LLP
                                    LAWRENCE J. HILTON
5                                   JENNIFER SUN

6
                                    By:  _____
7                                            Lawrence J. Hilton

8                                   Attorneys for Plaintiffs STRIKEPOINT
9                                   TRADING, LLC, and OPTIONEER, LLC

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28