LAWRENCE J. HILTON (STATE BAR NO. 156524)
          (lhilton@hewittoneil.com
WILLIAM E. HALLE (STATE BAR NO. 150686)
JOHN M. WHELAN (STATE BAR NO. 174928)
JENNIFER SUN (STATE BAR NO. 238942)
HEWITT & O'NEIL LLP
19900 MacArthur Boulevard
Suite 1050
Irvine, California 92612
Telephone: (949) 798-0500
Facsimile: (949) 798-0511

Attorneys for Plaintiffs
STRIKEPOINT TRADING, LLC and
OPTIONEER, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| STRIKEPOINT TRADING, LLC, a California limited liability company; and OPTIONEER, LLC, a Nevada limited liability company;<br><br>Plaintiffs,<br><br>v.<br><br>AIMEE ELIZABETH SABOLYK, an individual dba INNOVATIVE OPTION STRATEGIES, and GLOBAL ASSET ADVISORS, LLC an Illinois limited liability company, and JOHN MATTHEW MONDRAGON, an individual,<br><br>Defendants | Case No. SACV07-1073 DOC (MLGx)<br><br>**PLAINTIFF STRIKEPOINT TRADING, LLC'S TRIAL BRIEF [L.R. 16-10]**<br><br>Hon. David O. Carter<br><br>Trial:   March 10, 2009 |

Pursuant to Local Rule 16-10, Plaintiff STRIKEPOINT TRADING, LLC ("StrikePoint") submits this Trial Brief to reply to the legal points and authorities that Defendants raise in their Memorandum of Contentions of Fact and Law:

///

1  **I.      StrikePoint's Trade Secret Misappropriation Claims**:

2          StrikePoint contends, and will prove at trial, that Defendants misappropriated

3  StrikePoint's trade secrets by improperly acquiring, using and disclosing

4  StrikePoint's confidential client list and client contact information for Defendants'

5  gain.  In their Memorandum of Contentions of Fact and Law, Defendants

6  mischaracterize the applicable law, so StrikePoint reviews it briefly here and also

7  demonstrates how Defendants' characterization is not supported by the case law.

8          Under California law, information is a trade secret if it: 1) derives value from

9  not being generally known to the public or to persons who can obtain economic

10  value from its disclosure or use, and 2) is the subject of reasonable efforts to

11  maintain the secrecy of the information.  Cal. Civ. Code § 3426.1(d); *Reeves v.*

12  *Hanlon* (2004) 33 Cal.4th 1140, 1155.

13

14        A. StrikePoint's Client List Has Independent Economic Value.

15          A client list and client contact information can have economic value to

16  qualify as a trade secret if disclosure of the information would allow a competitor to

17  direct its sales efforts to those customers who have already shown a willingness to

18  use a unique type of service or product as opposed to a list of people who only

19  might be interested.  *Morlife, Inc. v. Perry* (1997) 56 Cal. App. 4th 1514, 1522;

20  *American Credit Indemnity Co. v. Sacks* (1989) 213 Cal. App. 3d 622, 630-631.  For

21  example, in *American Credit*, *supra*, plaintiff was a national underwriter of credit

22  insurance, an "esoteric insurance" that is sold to wholesalers that sell on credit

23  terms, which is designed to protect the insured against excessive bad debts.

24  *American Credit, supra,* 213 Cal. App. 3d at 625.  The court found that the customer

25  list had "potential economic value because it allow[ed] a competitor to direct sales

26  efforts to the elite 6.5 percent of those potential customers which already have

27  evinced a predisposition to purchase credit insurance." *Id.* at 631.

28

Similarly in *Morlife, supra,* the court considered whether plaintiff's client information had economic value to qualify as a trade secret. *Morlife, supra,* 56 Cal. App. 4th at 1522. Plaintiff was in the business of commercial roof repair and maintenance, as distinguished from replacement roofing. *Id.* at 1521. The court found that its customers were not readily ascertainable, but only discoverable with great effort. *Id.* at 1522. In both *American Credit* and *Morlife*, the plaintiffs had spent a great deal of time and effort to identify a distinct population of consumers with a predisposition to consume the services the plaintiffs offered. This is what gave the client information value as trade secrets for the plaintiffs in *American Credit* and *Morlife*, and it is what gives economic value to StrikePoint's client list and client contact information, as well.

In its Memorandum of Contentions, StrikePoint has already thoroughly described the key evidence that it will present to the jury to establish that its client list and client contact information has independent economic value.

B. <u>StrikePoint Protected The Secrecy Of Its Client List</u>.

StrikePoint will also prove at trial that it took reasonable steps to maintain the secrecy of its client list and client contact information. Reasonable efforts to maintain secrecy have been held to include, for example, advising employees of the existence of a trade secret, limiting access to a trade secret on "need to know basis," and controlling plant access." *Courtesy Temporary Service, Inc. v Camacho* (1990) 222 Cal. App. 3d 1278, 1288. In its Memorandum of Contentions, StrikePoint thoroughly describes the key evidence it will present at trial to prove that it took reasonable steps to maintain the secrecy of its client list and client contact information.

///

1      C. <u>Defendants' Arguments That StrikePoint Must Demonstrate That Its</u>

2           <u>Client List Client Contact Information Is Its Main Asset And That Its</u>

3           <u>Business Relationships Are Exclusive, Have No Merit.</u>

4      In Defendants' Memorandum of Contentions of Fact and Law, they argue that

5 StrikePoint must show more than the two elements called for in Cal. Civ. Code

6 section 3426.1(d). Defendants claim that an "exclusive type relationship" is key to

7 determining whether information is a trade secret.[1] And, Defendants claim that

8 unless the client information is StrikePoint's "main asset", it is not entitled to trade

9 secret protection (*See* Defendants' Memorandum of Contentions of Fact and Law, p.

10 2:25-28, p. 3:1, p. 7:6 – p. 9:1). Defendants cite three trade secret cases (*Morlife,*

11 *supra, Courtesy Temp., supra,* and *American Paper v. Kirgan* (1986) 183 Cal. App.

12 3d 1318) as support for these propositions, but, upon review, none of them bolsters

13 Defendants' point (Defendants' Memorandum of Contentions of Fact and Law, p.

14 3:1-3). Rather, all three confirm that, to establish that the client list and client

15 contact information is a trade secret, StrikePoint need only establish that the client

16 information has independent economic value and that StrikePoint took reasonable

17 steps to maintain its secrecy.

18      For example, in *Morlife, supra,* the court evaluated the reasonable steps

19 plaintiff had taken to protect its client information from disclosure. While

20 evaluating this evidence, the court cited the company president's testimony that the

21 client list was the company's "main asset". The court found that the client list's

22 status as the company's main asset was the reason the information was stored on

23 computer with restricted access. *Morlife, supra,* 56 Cal. App. 4th at 1523. But the

24

25

---

26 [1] Defendants make this claim despite this Court's ruling that "[it] does not read a lack of an exclusivity requirement as determinative in deciding whether a client list is a trade secret."

27 (Order Granting In Part and Denying In Part Defendants' Motion for Summary Judgment, p. 15:7-8.)

28

1  court did not hold that plaintiff had to demonstrate that the client list was its main
2  asset.

3       Similarly, in *American Paper, supra,* the court makes mention of "exclusive
4  business relationships", but it does not find that an exclusive business relationship is
5  necessary for client information to be a trade secret. *American Paper, supra* 183
6  Cal. App. 3d. at 1326.  Instead, the court mentions the absence of exclusive business
7  relationships while discussing all the reasons that the customers on plaintiff's client
8  list were already known or readily ascertainable to other persons in plaintiff's
9  shipping business.  *Id.*  The court of appeal concluded that the trial court properly
10  found the plaintiff's client list was not a trade secret because it was obvious that <u>all</u>
11  of plaintiff's competitors had secured the same information as plaintiff and had
12  procured the information in the same manner that plaintiff had.  *Id.*  In other words,
13  the information had no "independent economic value".

14       In the third case cited by Defendants, *Courtesy Temp., supra*, the court
15  applied the "two-prong test" from Cal. Civ. Code section 3426.1(d).  *Courtesy*
16  *Temp., supra,* 222 Cal. App. 3d at 1287.  There is no mention in the decision of an
17  additional factor – neither "exclusive business relationship" nor "main asset".

18       Thus, Defendants' arguments at page 7 of their Memorandum of Contentions
19  – that the "main asset" factor has been recognized in the seminal case law affording
20  protection to customer lists, and that the non-exclusive nature of the relationship
21  between StrikePoint and its customers demonstrates that the customer information is
22  not a trade secret – have no legal support.  What matters is the two prong test in Cal.
23  Civ. Code section 3426.1(d).

24

25  **II.    StrikePoint's Breach of Contract Claims:**

26       StrikePoint contends, and will establish at trial, that Defendants Sabolyk and
27  Mondragon breached the Non-Disclosure Agreements ("NDA") that each signed by
28  misappropriating StrikePoint's client list and client contact information and using

1   that information to solicit StrikePoint customers for Defendants' personal benefit

2   and for the benefit of their employer Defendant Global Asset Advisors, LLC.

3          As the Court stated in its December 22, 2008 Order Granting In Part and

4   Denying In Part Defendants' Motion For Summary Judgment, the merits of

5   StrikePoint's breach of contract claims turn on whether StrikePoint's client

6   information is entitled to trade secret protection (Order, p. 10:4-7).  In its

7   Memorandum of Contentions and in the previous section of this Trial Brief,

8   StrikePoint has identified to the Court the legal authorities and the key evidence

9   with which it will establish that its client information is trade secret information.

10         In their Memorandum of Contentions, Defendants do not deny that, if the

11  client information is a trade secret, then the non-solicitation provisions in the NDAs

12  are enforceable (*See* Defendants' Memorandum of Contentions of Fact and Law, p.

13  4:13-15).  In fact, covenants not to compete (e.g. non-solicitation provisions in

14  employment agreements) that are necessary to protect the employer's trade secret

15  information are valid and enforceable under California law and are not invalidated

16  by Cal. Bus. & Prof. Code section 16600.  *See Edwards II v. Arthur Andersen*,

17  (2008) 44 Cal. 4th 937; *Muggill v. Reuben H. Donnelley Corp.*, (1965) 62 Cal.2d

18  239; *Metro Traffic Control v. Shadow Traffic Network*, (1994) 22 Cal.App.4th 853;

19  *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Chung*, 2001 U.S. Dist. LEXIS 3248,

20  *12-13 (C.D. Cal. Feb. 2, 2001), *citing John F. Matull & Assocs., Inc. v. Cloutier*,

21  (1987) 194 Cal. App. 3d 1049, 1054 (finding that section 16600 of the California

22  Business and Professions Code does not "invalidate an employee's agreement not to

23  disclose his former employer's confidential customer lists or other trade secrets or

24  not to solicit these customers."); *Fowler v. Varian Assocs., Inc.*, (1987) 196 Cal.

25  App. 3d 34, 44 ("Agreements designed to protect an employer's proprietary

26  information do not violate section 16600.").

27         In its Memorandum of Contentions, StrikePoint thoroughly describes the key

28  evidence it will present at trial to prove that its client information is a trade secret,

H&O: #71332 v1

1   and that Sabolyk and Mondragon appropriated StrikePoint's client information for
2   their personal benefit and for the benefit of their employer Defendant Global Asset
3   Advisors, LLC.

4

5   **III.    StrikePoint's Unfair Competition Claims:**

6        StrikePoint contends, and it will prove at trial, that Defendants are liable to
7   StrikePoint for unfair competition under Cal. Business & Professions Code section
8   17200. Misappropriation of StrikePoint's trade secrets constitutes unfair
9   competition. *Gregory v. Albertson's, Inc.* (2002) 104 Cal. App. 4th 845, 851.

10       StrikePoint also contends that Defendants can be liable for unfair competition
11  under Section 17200 for Sabolyk and Mondragon's solicitation of StrikePoint's
12  clients, even in the absence of trade secret misappropriation. This is because
13  StrikePoint can establish that Defendants are liable for common law unfair
14  competition by proving that: 1) StrikePoint invested substantial time, skill or money
15  in developing and maintaining its client list and client contact information; (2) that
16  defendants appropriated and used StrikePoint's client information at little or no cost;
17  (3) that defendants' appropriation and use of the client information was without the
18  authorization or consent of StrikePoint; and (4) that StrikePoint has been injured by
19  the defendants' conduct. *City Solutions, Inc. v. Clear Channel Communications,*
20  *Inc.*, 365 F.3d 835, 842 (9th Cir. 2004); *Balboa Ins. Co. v. Trans Global Equities*
21  (1990) 218 Cal. App. 3d 1327, 1342.

22       To prevail on the Section 17200 claim, StrikePoint must show that a business
23  or trade practice of Defendants violates any other law. *Gregory, supra,* 104 Cal.
24  App. 4th at 851. StrikePoint will show that Defendants' business practices
25  constituted either misappropriation of trade secrets or common law unfair
26  competition.

27

28

H&O: #71332 v1

7

1      In its Memorandum of Contentions, StrikePoint thoroughly describes the key

2  evidence it will present at trial to prove its unfair competition claims against

3  Defendants.

4

5  DATED:  March 3, 2009          HEWITT & O'NEIL LLP
6                               LAWRENCE J. HILTON
                                WILLIAM E. HALLE
7                               JOHN M. WHELAN
                               JENNIFER SUN

8

9                          By: _____
10                             Jennifer Sun

11                        Attorneys for Plaintiffs
                        STRIKEPOINT TRADING, LLC and
12                        OPTIONEER, LLC