FILED • SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT

MAR 16 2009

CENTRAL DISTRICT OF CALIFORNIA
BY_____ DEPUTY

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STRIKEPOINT TRADING LLC, ET. AL., ) | CASE NO. SA CV07-1073 DOC(MLGx) |
| ) | |
| Plaintiff, ) | |
| ) | GIVEN JURY INSTRUCTIONS |
| -v- ) | |
| AIMEE ELIZABETH SABOLYK, ET. AL. ) | |
| ) | |
| Defendants, ) | |
| ) | |

# JURY INSTRUCTION NO. 1

## (Introduction)

Members of the Jury: Now that you have heard all of the evidence and the arguments of the attorneys, it is my duty to instruct you as to the law of the case.

A copy of these instructions will be sent with you to the jury room when you deliberate.

You must not infer from these instructions or from anything I may say or do as indicating that I have an opinion regarding the evidence or what your verdict should be.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.

**JURY INSTRUCTION NO. 2**

(Burden Of Proof:  Preponderance Of The Evidence)

When a party has the burden of proof on any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

# JURY INSTRUCTION NO. 2

(Two Or More Parties – Different Legal Rights)

You should decide the case as to each defendant separately. Unless otherwise stated, the instructions apply to all parties.

# JURY INSTRUCTION NO. 4

### (What Is Evidence)

The evidence you are to consider in deciding what the facts are consists of:

      1. the sworn testimony of any witness;

      2. the exhibits which are received into evidence; and

      3. any facts to which the lawyers have agreed.

# JURY INSTRUCTION NO. 5

### (What Is Not Evidence)

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1) Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements, and will say in their closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2) Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3) Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered. In addition sometimes testimony and exhibits are received only for a limited purpose; when I give a limiting instruction, you must follow it.

(4) Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

# JURY INSTRUCTION NO. 6

## (Direct And Circumstantial Evidence)

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

# JURY INSTRUCTION NO. 7

### (Ruling On Objections)

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. If I overrule the objection, the question may be answered or the exhibit received. If I sustain the objection, the question cannot be answered, and the exhibit cannot be received. Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore the evidence. That means that when you are deciding the case, you must not consider the evidence that I told you to disregard.

# JURY INSTRUCTION NO. 8

## (Credibility Of Witnesses)

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it. Proof of a fact does not necessarily depend on the number of witnesses who testify about it.  In considering the testimony of any witness, you may take into account:

(1) the opportunity and ability of the witness to see or hear or know the things testified to;

(2) the witness's memory;

(3) the witness's manner while testifying;

(4) the witness's interest in the outcome of the case and any bias or prejudice;

(5) whether other evidence contradicted the witness's testimony;

(6) the reasonableness of the witness's testimony in light of all the evidence; and

(7) any other factors that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on the

1  number of witnesses who testify about it.

### JURY INSTRUCTION NO. 9

(Stipulations of Fact)

The parties have agreed to certain facts. You should therefore treat these facts as having been proved. These facts are as follows:

(1)    Plaintiff StrikePoint Trading, LLC is an introducing broker registered with the Commodities Futures Trading Commission ("CFTC");

(2)    Defendant Global Asset Advisors, LLC ("GAA") is a commodities and futures brokerage company in Chicago, Illinois. Defendants Aimee Sabolyk and John Mondragon work for GAA under the d/b/a/ Daniels Trading;

(3)    On or about October 13, 2003, Sabolyk began working at Altavest as an administrative assistant/broker assistant;

(4)    In June 2004, Sabolyk's employer changed from Altavest to StrikePoint;

(5)    Sabolyk was a broker for StrikePoint from 2004 until June 1, 2007;

(6)    As a StrikePoint broker, Sabolyk executed an acknowledgment that she had received StrikePoint's Policies and Procedures Manual;

(7)     On June 1, 2007 Sabolyk resigned from her position as a StrikePoint broker;

(8)     On June 18, 2007 Sabolyk commenced working for GAA;

(9)     Mondragon commenced working for StrikePoint as a broker on July 11, 2005;

(10)    As a StrikePoint broker, Mondragon executed an acknowledgment that he had received StrikePoint's Policies and Procedures Manual;

(11)    Mondragon quit working for StrikePoint on or about January 7, 2008;

(12)    Dan Flaherty opened an account at StrikePoint in May 2004, closed his account at StrikePoint in December 2008, and opened an account at Global Asset Advisors in January 2008;

(13)    John Kendall opened several accounts at StrikePoint in May 2004, closed those accounts at StrikePoint in August 2007, and opened several accounts at Global Asset Advisors in July 2007;

(14)    James Lohmann opened an account at StrikePoint in May 2004, closed his account at StrikePoint in August 2007, and opened an account at Global Asset Advisors in February 2008;

(15)    Stephen Spencer opened an account at StrikePoint in May 2004, closed his account at StrikePoint in December 2007, and opened an account at Global Asset Advisors in October 2007;

(16)  Virginia Lohmann opened an account at StrikePoint in June 2004, did not close her account at StrikePoint, and opened an account at Global Asset Advisors in October 2007;

(17)  Fred Lohmann opened an account at StrikePoint in June 2004, did not close his account at StrikePoint, and opened an account at Global Asset Advisors in October 2007;

(18)  Chris Wood opened an account at StrikePoint in June 2004, closed his account at StrikePoint in February 2008, and opened an account at Global Asset Advisors in February 2008.  Mr. Wood closed his account at Global Asset Advisors in October 2008;

(19)  Michael Kessler opened an account at StrikePoint in August 2004, closed his account at StrikePoint in January 2008, and opened an account at Global Asset Advisors in June 2007;

(20)  Tim Smith opened an account at StrikePoint in September 2004, closed his account at StrikePoint in November 2007, and opened an account at Global Asset Advisors in September 2007;

(21)  James G. Spencer opened an account at StrikePoint in October 2006, closed his account at StrikePoint in December 2007, and opened an account at Global Asset Advisors in December 2007;

(22)  Greg Fasiang opened an account at StrikePoint in May 2004, closed his account at StrikePoint in February 2008, and opened an account at Global Asset Advisors in January 2008;

(23) Dennis Anderson opened an IRA account at StrikePoint in July 2004, closed this account at StrikePoint in February 2008, and opened an IRA account at Global Asset Advisors in February 2008;

(24) Dennis Anderson opened a cash account at StrikePoint in July 2004, closed this account at StrikePoint in May 2008, and opened a cash account at Global Asset Advisors in May 2008;

(25) Charles Hull opened an account at StrikePoint in July 2005, closed his account at StrikePoint in October 2008, and opened an account at Global Asset Advisors in March 2008;

(26) Martin Clarke opened an account at StrikePoint in November 2005, closed his account at StrikePoint in June 2008, and opened an account at Global Asset Advisors in January 2008;

(27) David Stange opened an account at StrikePoint in January 2006, closed his account at StrikePoint in February 2008, and opened an account at Global Asset Advisors in January 2008;

(28) David Tan opened an account at StrikePoint in January 2006, closed his account at StrikePoint in March 2008, and opened an account at Global Asset Advisors in March 2008;

(29) John MacDonald opened an account at StrikePoint in February 2006, closed his account at StrikePoint in April 2008, and opened an account at Global Asset Advisors in April 2008;

(30)   James Meyer opened an account at StrikePoint in May 2006, closed his account at StrikePoint in May 2008, and opened an account at Global Asset Advisors in February 2008;

(31)   Duane Riddle opened an account at StrikePoint in May 2006, closed his account at StrikePoint in May 2008, and opened an account at Global Asset Advisors in February 2008;

(32)   Pramil Kumar opened an account at StrikePoint in October 2006. Mr. Kumar has not closed his account at StrikePoint.  Mr. Kumar opened an account at Global Asset Advisors in March 2008.

# JURY INSTRUCTION NO. 10

## (Deposition In Lieu Of Live Testimony)

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded. When a person is unavailable to testify at trial, the deposition of that person may be used at the trial.

You should consider deposition testimony, presented to you in court in lieu of live testimony, insofar as possible, in the same way as if the witness had been present to testify.

Do not place any significance on the behavior or tone of voice of any person reading the questions or answers.

# JURY INSTRUCTION NO. 11

## (Impeachment Evidence—Witness)

Evidence that a witness lied under oath on a prior occasion may be considered, along with all other evidence, in deciding whether or not to believe the witness and how much weight to give to the testimony of the witness and for no other purpose.

# JURY INSTRUCTION NO. 12

## (Expert Opinion)

Some witnesses, because of education or experience, are permitted to state opinions and the reasons for those opinions.

Opinion testimony should be judged just like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

# JURY INSTRUCTION NO. 13

## (Charts And Summaries In Evidence)

Certain charts and summaries may be received into evidence to illustrate information brought out in the trial. Charts and summaries are only as good as the underlying evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

# JURY INSTRUCTION NO. 14

## (Duty To Deliberate)

When you begin your deliberations, you should elect one member of the jury as your presiding juror. That person will preside over the deliberations and speak for you here in court.

You will then discuss the case with your fellow jurors to reach agreement if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

Do not hesitate to change your opinion if the discussion persuades you that you should. Do not come to a decision simply because other jurors think it is right.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

# JURY INSTRUCTION NO. 6

### (Communication With Court)

If it becomes necessary during your deliberations to communicate with me, you may send a note through the clerk, signed by your presiding juror or by one or more members of the jury. No member of the jury should ever attempt to communicate with me except by a signed writing; I will communicate with any member of the jury on anything concerning the case only in writing, or here in open court. If you send out a question, I will consult with the parties before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including me—how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged. Do not disclose any vote count in any note to the court.

# JURY INSTRUCTION NO. 6

## (Return Of Verdict)

Verdict forms have been prepared for you.  After you have reached unanimous agreement on a verdict, your presiding juror will fill in the forms that have been given to you, sign and date it, and advise the court that you are ready to return to the courtroom.

# JURY INSTRUCTION NO. 17

### (Corporations And Partnerships – Fair Treatment)

All parties are equal before the law and a limited liability company is entitled to the same fair and conscientious consideration by you as any party.

# JURY INSTRUCTION NO. 18

### (Misappropriation Of Trade Secrets—Introduction)

StrikePoint claims that it is the owner of a client list.

StrikePoint claims that this client list is a trade secret and that Defendants GAA, Aimee Sabolyk and/or John Mondragon "misappropriated" it. "Misappropriation" means the improper use or disclosure of the trade secret.

StrikePoint also claims that Defendants GAA, Aimee Sabolyk and/or John Mondragon's misappropriation caused StrikePoint harm or Defendants GAA, Aimee Sabolyk and/or John Mondragon to be unjustly enriched.

Defendants deny that StrikePoint's client list is a trade secret. Defendants each deny misappropriating information from StrikePoint's client list. Finally, defendants deny that StrikePoint was harmed by defendants' use or disclosure of StrikePoint's client information and that they were unjustly enriched.

# JURY INSTRUCTION NO. 19

(Misappropriation Of Trade Secret – Essential Factual Elements)

StrikePoint claims that Defendants GAA, Aimee Sabolyk, and/or John Mondragon have misappropriated a trade secret. To succeed on this claim, StrikePoint must prove all of the following:

(1)   That StrikePoint owned the client list;

(2)   That the client list was a trade secret at the time of the misappropriation;

(3)   That that defendant improperly used or disclosed the trade secret;

(4)   That StrikePoint was harmed or that that defendant was unjustly enriched; and

(5)   That that defendant's use or disclosure was a substantial factor in causing StrikePoint's harm or that defendant to be unjustly enriched.

# JURY INSTRUCTION NO. 20

### ("Trade Secret" Defined)

To prove that the client list was a trade secret, StrikePoint must prove all of the following:

(1)   That the client list was secret;

(2)   That the client list had actual or potential independent economic value because it was secret; and

(3)   That StrikePoint made reasonable efforts to keep the client list secret.

# JURY INSTRUCTION NO. 21

(Secrecy Requirement)

The secrecy required to prove that something is a trade secret does not have to be absolute in the sense that no one else in the world possesses the information. It may be disclosed to employees involved in StrikePoint's use of the trade secret as long as they are instructed to keep the information secret. It may also be disclosed to nonemployees if they are obligated to keep the information secret. However, it must not have been generally known to the public or to people who could obtain value from knowing it.

# JURY INSTRUCTION NO. 22

### (Reasonable Efforts To Protect Secrecy)

To establish that the client list is a trade secret, StrikePoint must prove that it made reasonable efforts under the circumstances to keep it secret. "Reasonable efforts" are the efforts that would be made by a reasonable business in the same situation and having the same knowledge and resources as StrikePoint, exercising due care to protect important information of the same kind.

In determining whether or not StrikePoint made reasonable efforts to keep the client list secret, you should consider all of the facts and circumstances. Among the factors you may consider are the following:

a. Whether documents or computer files containing the client list were marked with confidentiality warnings;

b. Whether StrikePoint instructed its employees to treat the client list as confidential;

c. Whether StrikePoint restricted access to the client list to persons who had a business reason to know the information;

d. Whether StrikePoint took any action to protect the specific client list, or whether it relied on general measures taken to protect its business information or assets;

e.  Whether StrikePoint required employees or others with access to the client list to sign confidentiality or nondisclosure agreements;

f.  Whether StrikePoint did anything to protect the disclosure of the contents of some or all of the client list to the public through websites, marketing materials, or other means.

The presence or absence of any one or more of these factors is not necessarily determinative.

**mm**

# JURY INSTRUCTION NO. 23

(Misappropriation by Use or Disclosure (Sabolyk and Mondragon))

Defendants Aimee Sabolyk or John Mondragon misappropriated StrikePoint's trade secret by use or disclosure if they:

(1)     Used or disclosed it without StrikePoint's consent; and

(2)     At the time of use or disclosure, knew or had reason to know that his or her knowledge of StrikePoint's trade secret was acquired under circumstances creating a legal obligation to limit use of StrikePoint's client list or keep the client list secret.

# JURY INSTRUCTION NO. 24

### (Misappropriation by Use (GAA))

Defendant GAA misappropriated StrikePoint's trade secret by use if they:

(1)   Used it without StrikePoint's consent; and

(2)   Did any of the following:

Acquired knowledge of the trade secret by improper means; or

At the time of use, knew or had reason to know that its knowledge of StrikePoint's trade secret came from or through Sabolyk or Mondragon, and that Sabolyk or Mondragon had a duty to StrikePoint to limit use of StrikePoint's client information.

# JURY INSTRUCTION NO. 26

(Solicitation Defined)

Solicit is defined as:  To ask for with earnestness, to make petition to, to endeavor to obtain, to awake or excite to action, to appeal to, to try to obtain, or to invite.  It implies personal petition and importunity addressed to a particular individual to do some particular thing.

# JURY INSTRUCTION NO. 26

### (Announcement In Change Of Employment And Acceptance Of Business Of Clients Of Former Employer Is Permitted)

Merely informing clients of one's former employer of a change of employment, without more, is not solicitation.  Neither does the willingness to discuss business upon invitation of another party constitute solicitation on the part of the invitee, and will not enjoin a former employee from receiving business from the clients of his or her former employer.

**JURY INSTRUCTION NO. 27**

(Remedies For Misappropriation Of Trade Secret)

If StrikePoint proves that GAA, Aimee Sabolyk and/or John Mondragon misappropriated its trade secret, then StrikePoint is entitled to recover damages if the misappropriation caused StrikePoint to suffer an actual loss or GAA, Aimee Sabolyk and/or John Mondragon to be unjustly enriched.

# JURY INSTRUCTION NO. 23

(Unjust Enrichment)

GAA, Aimee Sabolyk, and John Mondragon were unjustly enriched if their misappropriation of StrikePoint's trade secret caused them to receive a benefit that they otherwise would not have achieved.

To decide the amount of any unjust enrichment, first determine the value of each defendant's benefit that would not have been achieved except for his or her misappropriation. Then subtract from that amount that defendant's reasonable expenses.  In calculating the amount of any unjust enrichment, do not take into account any amount that you included in determining any amount of damages for StrikePoint's actual loss.

# JURY INSTRUCTION NO. 29

## ("Improper Means" Of Acquiring Trade Secret)

Improper means of acquiring a trade secret or knowledge of a trade secret include, but are not limited to, theft, misrepresentation, breach or inducing a breach of a duty to maintain secrecy, wiretapping, or electronic eavesdropping.

However, it is not improper to acquire a trade secret or knowledge of the trade secret by any of the following:

(1)     Independent efforts to invent or discover the information;

(2)     Observing the information in public use or on public display; or

(3)     Obtaining the information from published literature, such as trade journals, reference books, the Internet, or other publicly available sources.

# JURY INSTRUCTION NO. 30

("Independent Economic Value" Explained)

A client list has independent economic value if it gives the owner an actual or potential business advantage over others who do not know the information and who could obtain economic value from its disclosure or use.

In determining whether the client list had actual or potential independent economic value because it was secret, you may consider the following:

(a)   The extent to which StrikePoint obtained or could obtain economic value from the client list in keeping it secret;

(b)   The extent to which others could obtain economic value from the client list if it were not secret;

(c)   The amount of time, money, or labor that StrikePoint expended in developing the client list;

(d)   The amount of time, money, or labor that would be saved by a competitor who used the client list; and

(e)   The importance of the client list and exclusivity of the client relationship to StrikePoint's business.

The presence or absence of any one or more of these factors is not necessarily determinative.

# JURY INSTRUCTION NO. 31

### (Affirmative Defense—Information Was Readily Ascertainable By Proper Means)

GAA, Aimee Sabolyk, and John Mondragon did not misappropriate StrikePoint's trade secret if they prove that the client list was readily ascertainable by proper means at the time of the alleged use or disclosure.

There is no fixed standard for determining what is "readily ascertainable by proper means." In general, information is readily ascertainable if it can be obtained, discovered, developed, or compiled without significant difficulty, effort, or expense. For example, information is readily ascertainable if it is available in trade journals, reference books, published materials, or on the internet. On the other hand, the more difficult information is to obtain, and the more time and resources that must be expended in gathering it, the less likely it is that the information is readily ascertainable by proper means.

# JURY INSTRUCTION NO. 32

## (Breach of Contract—Introduction)

StrikePoint claims that it entered into a contract with Aimee Sabolyk and John Mondragon.  The validity of the contract and the provision that was allegedly breached turns on whether the client list at issue is a protectable trade secret.  You have been instructed on what constitutes a trade secret and misappropriation of a trade secret.

# JURY INSTRUCTION NO. 37

(Breach of Contract--Essential Factual Elements)

To recover damages from Aimee Sabolyk or John Mondragon for breach of contract, StrikePoint must prove all of the following:

(1) That StrikePoint and Aimee Sabolyk or John Mondragon entered into a contract;

(2) That StrikePoint did all, or substantially all, of the significant things that the contract required it to do;

(3) That Aimee Sabolyk or John Mondragon failed to do something that the contract required them to do; and

(4) That StrikePoint was harmed by Sabolyk's or Mondragon's action.

# JURY INSTRUCTION NO. 34

### (Damages—Proof and Measures of Types of Damages)

It is the duty of the Court to instruct you about the measure of damages. By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered.

If you find for the plaintiff, you must determine the plaintiff's damages. The plaintiff has the burden of proving damages by a preponderance of the evidence. Damages means the amount of money that will reasonably and fairly compensate the plaintiff for any injury you find was caused by the defendant. You should consider the following:

In determining the measure of damages, you should consider:

The nature and extent of the injuries;

The reasonable value of profits lost to the present time; and

The reasonable value of future profits lost.

It is for you to determine what damages, if any, have been proved.

Your award must be based upon evidence and not upon speculation, guesswork or conjecture.

# JURY INSTRUCTION NO. 35

### (Introduction to Contract Damages)

If you decide that StrikePoint has proved its claim against either Sabolyk or Mondragon, or both, for breach of contract, you also must decide how much money will reasonably compensate StrikePoint for the harm caused by the breach. This compensation is called "damages." The purpose of such damages is to put StrikePoint in as good a position as it would have been if Sabolyk or Mondragon had performed as promised.

To recover damages for any harm, Plaintiff must prove:

1.   That the harm was likely to arise in the ordinary course of events from the breach of the contract; or

2.   That when the contract was made, both parties could have reasonably foreseen the harm as the probable result of the breach.

StrikePoint also must prove the amount of its damages according to the following instructions.  It does not have to prove the exact amount of damages. You must not speculate or guess in awarding damages.

# JURY INSTRUCTION NO. 36

(Lost Profits—No Profits Earned)

To recover damages for lost profits against Sabolyk or Mondragon, StrikePoint must prove that it is reasonably certain it would have earned profits but for Sabolyk's or Mondragon's breach of the contract.

To decide the amount of damages for lost profits, you must determine the gross, or total, amount StrikePoint would have received if the contract had been performed and then subtract from that amount the costs StrikePoint would have had if the contract had been performed.

You do not have to calculate the amount of the lost profits with mathematical precision, but there must be a reasonable basis for computing the loss.

# JURY INSTRUCTION NO. 37

### (Present Cash Value of Future Damages)

To recover for future harm, StrikePoint must prove that such harm is reasonably certain to occur and must prove the amount of those future damages. The amount of damages for future harm must be reduced to present cash value. This is necessary because money received now will, through investment, grow to a larger amount in the future.

To find present cash value, you must determine the amount of money which, if reasonably invested today, will provide StrikePoint with the amount of its future damages.

You may consider expert testimony in determining the present cash value of future damages.

# JURY INSTRUCTION NO. 36

### (Damages—Mitigation)

The plaintiff has a duty to use reasonable efforts to mitigate damages. To mitigate means to avoid or reduce damages.

The defendant has the burden of proving by a preponderance of the evidence:

    (1)    that the plaintiff failed to use reasonable efforts to mitigate damages; and

    (2)    the amount by which damages would have been mitigated.

# JURY INSTRUCTION NO. 91

### (Plaintiff May Not Recover Duplicate Contract and Tort Damages)

StrikePoint has made claims against Aimee Sabolyk for breach of contract and misappropriation of trade secrets. StrikePoint has also made claims against Mondragon for breach of contract and for misappropriation of trade secrets. If you decide that StrikePoint has proved both claims against Sabolyk, the same damages that resulted from both claims can be awarded only once. Similarly, if you decide that StrikePoint has proved both claims against Mondragon, the same damages that resulted from both claims can be awarded only once.