UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STRIKEPOINT TRADING, LLC, a California limited liability company, and OPTIONEER, LLC, a Nevada limited liability company,<br><br>　　　　　Plaintiff(s),<br>　　v.<br><br>AIMEE ELIZABETH SABOLYK, an individual dba INNOVATIVE OPTION STRATEGIES, and GLOBAL ASSET ADVISORS, LLC, an Illinois limited liability company, and JOHN MATTHEW MONDRAGON, an individual,<br><br>　　　　　Defendant(s).<br>_____ | CASE NO. SACV 07-1073 DOC (MLGx)<br><br>**O R D E R** GRANTING IN PART AND **DENYING IN PART MOTION FOR PERMANENT INJUNCTION** |

　　　Before the Court is Plaintiff StrikePoint Trading, LLC's ("StrikePoint) Motion for a Permanent Injunction against Defendants Aimee Elizabeth Sabolyk ("Sabolyk"), Global Asset Advisors, LLC ("GAA"), and John Matthew Mondragon ("Mondragon") (the "Motion").  After considering the moving, opposing, and replying papers, as well as the parties' oral argument, the Court hereby rules as follows:

**I.　　PROCEDURAL AND FACTUAL BACKGROUND**

　　　This matter came before a jury on Plaintiff's trade secret misappropriation claim against

all Defendants and breach of contract claims against Sabolyk and Mondragon.[1]  The trial commenced on March 10, 2009, and on March 16, 2009, the jury reached its verdict.

The jury received the following instructions regarding StrikePoint's claim for misappropriation of trade secret:

> StrikePoint claims that Defendants GAA, Aimee Sabolyk, and/or John Mondragon have misappropriated a trade secret.  To succeed on this claim, StrikePoint must prove *all* of the following:
>
> (1) That StrikePoint owned the client list;
>
> (2) That the client list was a trade secret at the time of the misappropriation;
>
> (3) That that defendant improperly used or disclosed the trade secret;
>
> (4) That StrikePoint was harmed or that that defendant was unjustly enriched; and
>
> (5) That that defendant's use or disclosure was a substantial factor in causing StrikePoint's harm or that defendant to be unjustly enriched.

Sklar Dec. in Supp. of Defs.'s Opp. ("Sklar Dec."), Exh. A (emphasis added).

Post-deliberation, the jury returned the following verdict on the trade secret misappropriation claim using the provided Special Verdict Form.  *See* Sklar Dec., Exh. B.  First, the jury found that StrikePoint owned the client list.  *Id*. at Question 1.  Second, the jury determined that the client list was a trade secret.  *Id.* at Question 2.  Third, the jury found that Defendant Sabolyk, but not Defendant Mondragon, solicited clients on the list.  *Id*. at Question 3.  Fourth, the jury found that Defendants Sabolyk and GAA "misappropriated the client list by improperly using the client list[.]"  *Id.* at Question 4.  Fifth, the jury found that Defendant

---

[1] By this Court's December 22, 2008 Order regarding Defendants' motion for full summary judgment, the Court dismissed Plaintiff's claims for violation of the Computer Fraud and Abuse Act (18 U.S.C. § 1030), common law unfair competition, and tortious interference with contractual relationship.  *See* Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment, Doc. No. 113.  StrikePoint has allegedly abandoned its trade libel claim.

1  Sabolyk, but not Defendant Mondragon, "misappropriated the client list by improperly
2  disclosing the client list to GAA[.]" *Id*. at Question 5. Sixth, the jury found that StrikePoint was
3  harmed by Defendants Sabolyk and GAA's missapropriation of the list. *Id*. at Question 6.
4  However, the jury found that the misappropriation of the client list by Defendants Sabolyk and
5  GAA was not a substantial factor in causing harm to StrikePoint. *Id*. at Question 7; *see also*, *Id*.
6  at Question 8 (not awarding damages as a result of preceding substantial factor question). The
7  jury also found that Defendants Sabolyk and GAA were not unjustly enriched by the
8  misappropriation of the client list. *Id*. at Question 9.
9       As to Plaintiff's breach of contract claims against Defendants Sabolyk and Mondragon,
10  the jury found that Defendant Sabolyk breached her confidentiality/nondisclosure agreement
11  ("CNDA") with Plaintiff and awarded Plaintiff $93,000.00 in lost profits and $9,300.00 in lost
12  future profits, for a total award against Sabolyk of $102,300.00. *See* Sklar Dec., Exh. C.
13  However, the jury found that Defendant Mondragon did not breach the CNDA "by directly or
14  indirectly soliciting StrikePoint Trading LLC's trade secret clients." *Id*. at Question 4.
15       Upon Plaintiff StrikePoint's request, the Court held a post-trial status conference with the
16  parties on June 1, 2009, in order to address any remaining issues after the jury verdict. *See*
17  Plaintiff [StrikePoint's] Request for Order Setting a Post-Trial Status Conference, Doc. No. 167,
18  at 2 ("WHEREAS, Plaintiff's claims against Sabolyk and GAA for violation of California
19  Business and Professions Code section 17200 ("Section 17200"), attorneys' fees under the
20  UTSA and permanent injunctive relief, which were not triable to the jury, remain to be argued
21  before and determined by the Court"). At that hearing Plaintiff articulated its intent to file
22  certain post-trial motions. As a result, the Court set a briefing schedule and set a hearing on any
23  contemplated motions for August 10, 2009 (the Court, on its own motion, moved the hearing
24  date to August 17, 2009). Despite reference to other post-trail matters (i.e. attorney's fees and
25  Plaintiff's Section 17200 claim), only the instant Motion for a Permanent Injunction followed.
26       By its request for a permanent injunction, Plaintiff seeks relief against all named
27  Defendants in three parts. Specifically, part one of the proposed injunction enjoins Defendants
28  from soliciting any of Plaintiff's clients served by Mondragon or Sabolyk or whose names

3

became known to the individual Defendants while they worked for Plaintiff. In addition, the injunction, as currently worded, enjoins Defendants from accepting any business or account transfers from Plaintiff's clients whom Defendants solicited at any time in the past. This part also precludes Defendants from accepting any business from any client of Plaintiff "whose records or information Defendants used in violation of their contractual and trade secret obligations to Plaintiff...and any client...whom Defendants may have contacted through the use of [such] information." Proposed Permanent Injunction, Part 1(c). Finally, part one prevents Defendants from "using, disclosing, or transmitting for any purpose, including the solicitation or acceptance of business or account transfers, the information contained in the records of Plaintiff." *Id*. at Part 1(d). Part two of the proposed permanent injunction requires Defendants, and anyone acting in concert with Defendants, to return to Plaintiff "any and all records or information pertaining to Plaintiff's clients...[and further directs Defendants] to purge any such information from their possession, custody, or control, within 24 hours of notice to Defendants or their counsel of the entry of the Permanent Injunction." *Id*. at Part 2. By part three, the proposed permanent injunction includes a list of twenty (20) individuals who have or currently have accounts with GAA that the parties stipulate are excluded from the terms of the injunction.

A final judgment in this matter has yet to be entered by the Court.

**II.    LEGAL STANDARD**

Plaintiff raises three grounds for the granting of a permanent injunction by this Court. First, StrikePoint argues that a permanent injunction should issue pursuant to California's Uniform Trade Secret Act. Second, Plaintiff argues that California's Unfair Competition Laws provide for injunctive relief here. Finally, Plaintiff argues that principles of equity and the traditional four-factor test for granting a permanent injunction are satisfied by the instant case.

California's Uniform Trade Secrets Act ("CUTSA") provides for injunctive relief. Cal. Civ. Code § 3426.2. Under that provision, "[a]ctual or threatened misappropriation may be enjoined." Cal. Civ. Code § 3426.2(a). "Upon application to the court, an injunction shall be terminated when the trade secret has ceased to exist, but the injunction may be continued for an additional period of time in order to eliminate commercial advantage that otherwise would be

derived from the misappropriation." *Id.* Furthermore, "[i]n appropriate circumstances, affirmative acts to protect a trade secret may be compelled by court order." Cal. Civ. Code § 3426.2(c).

California's unfair competition law, codified as California Business and Professions Code § 17200 ("Section 17200"), prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Parties may also seek injunctive relief for a violation of California' unfair competition law:

> Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction. The court may make such orders or judgments...as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition, as defined in this chapter, or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition.

Cal. Bus. & Prof. Code § 17203.

Traditionally, a plaintiff must satisfy a four-factor test in order to receive a permanent injunction. Specifically, "[a] plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MerchExchange, L.L.C.*, 547 U.S. 388, 391, 126 S. Ct. 1837 (2006); *see also, Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312, 102 S. Ct. 1798 (1982) ("The Court has repeatedly held that the basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies.").

### III. DISCUSSION

#### a. Plaintiff's Section 17200 Claim is Preempted.

As a preliminary matter, Defendants argue that Plaintiff cannot premise its entitlement to

5

1  a permanent injunction against Defendants on its Section 17200 claim because the Section
2  17200 claim is preempted by StrikePoint's CUTSA claim. Defendants direct the Court to a
3  recent California Court of Appeal's opinion in which the court held that CUTSA preempts
4  Section 17200 claims where the claims are based on the same common nucleus of facts. *See*
5  *K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*, 171 Cal. App. 4th 939, 954
6  (2009). In so ruling, the California Court of Appeal indicated that it "agree[d] with the federal
7  cases applying California law, which hold that CUTSA "preempts common law claims that are
8  'based on the same nucleus of facts as the misappropriation of trade secrets claim for relief.'"
9  *Id.* at 958 (*quoting Digital Envoy, Inc. v. Google, Inc.*, 370 F. Supp. 2d 1025, 1035 (N.D. Cal.
10 2005). By adopting the reasoning in such federal cases, the *K.C. Multimedia* Court also ruled
11 that CUTSA preemption should apply to both common law and statutory unfair competition
12 claims where the claims are based on the same operative facts. *See Id.* at 962 ("As with other
13 causes of action, appellant's statutory unfair competition claim rests squarely on its factual
14 allegations of trade secret misappropriation...That being so, this claim is also preempted.").
15     As Defendants point out, in ruling on Defendants' motion for summary judgment, this
16 Court relied on the reasoning in *Digital Envoy* and found that Plaintiff's claims for common law
17 unfair competition and tortious interference with contract were preempted by CUTSA, finding
18 that those claims were based on the same operative facts as Plaintiff's CUTSA claims. *See*
19 Order Granting in Part and Denying in Part Defendants' Mot. for Summ. J., Doc. No. 113, at 28-
20 29. With the California Court of Appeal adopting and extending the reasoning of *Digital Envoy*
21 to statutory unfair competition, the Court sees no reason why this claim too would not be
22 preempted. Indeed, Plaintiff's Section 17200 claim rests on the same factual allegations as those
23 contained in its CUTSA claim.
24     The Court acknowledges that in bringing its Motion for Permanent Injunction, StrikePoint
25 has not noticed the motion as one in which the Court is to decide the substantive merits of its
26 Section 17200 claim. However, by requesting injunctive relief based on Section 17200,
27 StrikePoint clearly requires this Court to determine if StrikePoint has a viable Section 17200
28 claim. *See, e.g.*, Pl.'s Mot. at 12 (arguing that Plaintiff is entitled to injunctive relief because the

evidence demonstrates that Mondragon has committed unfair business practices in violation of Section 17200). Thus, the Court determines that the issue is before it. However, in its reply briefing, Plaintiff provides no opposition to Defendants' position that Plaintiff's Section 17200 claim is preempted based on the reasoning in *K.C. Multimedia*. Instead, without citing to *K.C. Multimedia* or even expressly referring to Section 17200, Plaintiff appears to concede the preemption point by arguing that it is nevertheless entitled to a permanent injunction either based on CUTSA or due to the CNDAs signed by the individual Defendants which refer to injunctive relief. Thus, the Court finds Plaintiff's Section 17200 claim preempted.

### b. Injunctive Relief Against Defendants Sabolyk and GAA is Appropriate.

In arguing the instant Motion, the parties dispute the import and reach of the jury verdict. Specifically, the parties dispute whether Plaintiff prevailed on its trade secret misappropriation claim and therefore, whether that claim or any of the jury findings related to that claim can support injunctive relief.

For example, there is no dispute that in utilizing the Special Verdict Form, the jury found that Defendant Sabolyk solicited clients from Plaintiff's trade secret client list. Sklar Dec., Exh. B, Question 3. In addition, the jury found that Defendants Sabolyk and GAA "misappropriated the client list by improperly using the client list." *Id*. at Question 4. The jury also specifically found that Defendant Sabolyk "misappropriated the client list by improperly disclosing the client list to GAA." *Id*. at Question 5. And the jury made a finding that Defendant Sabolyk and Defendant GAA harmed StrikePoint by misappropriating its client list. *Id*. at Question 6.

However, the current point of contention centers on the jury's response to Question 7, in which the jury found that Defendants Sabolyk and GAA's "misappropriation of the client list was [not] a substantial factor in causing harm to [StrikePoint]." *Id*. at Question 7. Defendants contend that by this finding, as well as the jury's subsequent finding that Sabolyk and GAA were also not unjustly enriched by their misappropriation of the client list (*Id*. at Question 9), the jury found that Plaintiff lost on its trade secret misappropriation claim. And without prevailing on the merits of this claim, Defendants argue, the Court cannot provide injunctive relief under CUTSA. The Defendants point to the jury instruction regarding the trade secret

misappropriation claim that indicates as the fifth element of the cause of action "that defendant's use or disclosure was a substantial factor in causing StrikePoint's harm or that defendant to be unjustly enriched." Sklar Dec., Exh. A.

While noting the concerns raised by Defendants, the Court has a hard time concluding that despite the jury's findings that both GAA and Sabolyk "misappropriated the client list by improperly using the client list" (Sklar. Dec., Exh. B, Question 4), that Sabolyk personally solicited clients on that list (*Id.* at Question 3) and that "StrikePoint Trading, LLC was harmed by the misappropriation of its client list" (*Id.* at Question 6) by Sabolyk and GAA, StrikePoint is still not entitled to some form of injunctive relief. Stated differently, because the jury found that Defendants Sabolyk and GAA improperly misappropriated Plaintiff's clients list and used that list in a way that caused at least some harm to Plaintiff, Plaintiff is entitled to some form of protection preventing Defendants from using Plaintiff's trade secret information *going forward* even if there was no calculated past damages at the time of trial. *See Polo Fashions, Inc v. Dick Bruhn, Inc.*, 793 F.2d 1132, 1135-36 (9th Cir. 1986) (in the trademark infringement context, noting that "cessation of unlawful conduct can moot such a dispute," but also recognizing that "the reform of the defendant must be irrefutably demonstrated and total" (internal quotes and citations omitted")); *see also, Oculus Innovative Sciences, Inc. v. Nofil Corp.*, No. C. 06-1686-SI, 2007 WL 4044867, * 1. *6, *9-10 (N.D. Cal. Nov. 15, 2007) (holding that to prevail on its trade secret misappropriation claim, plaintiff need prove "(1) the existent of a trade secret, and (2) misappropriation," and thus awarding permanent injunctive relief on that basis alone).

Indeed, while the Court recognizes that the jury found that the substantial factor element was not met, Defendants still must deal with the consequences of the imprecise Special Verdict Form jointly drafted by the parties. In other words, the Court will not ignore the specific jury findings previously identified in this order that unequivocally identify wrongdoing on the part of Sabolyk and GAA with respect to Plaintiff's protectable trade secret. In addition, there is no dispute that StrikePoint prevailed on its breach of contract claim against Sabolyk; while the Court does not find that parties can contract for injunctive relief where the factors for equitable relief are not otherwise met, the Court at least notes that as in *Oculus*, the provisions of

Sabolyk's CNDA also refer to some form of injunctive relief as to Sabolyk, as the CNDA expressly identifies that Sabolyk agreed StrikePoint might be irreparably harmed if Sabolyk disclosed the information and that injunctive relief might be necessary. *See* Pl.'s Mot. at 8, n.2; *see also, Oculus*, No. C 06-1686-SI at*9 (noting that text of CNDA also supported issuance of an injunction where parties agreed that plaintiff might be subject to irreparable harm upon breach and that contract could be enforced in equity).

Defendants also contend that Plaintiff cannot show that it has been or will be irreparably harmed without injunctive relief, especially as Plaintiff presented expert testimony regarding the monetary damages it had suffered at trial. However, the Court entered a preliminary injunction in this matter finding that "Defendants' continued solicitation of StrikePoint clients results in a loss of business and customer goodwill that is difficult to quantify." *See* Order Granting Plaintiff's Motion for Preliminary Injunction, Doc. No. 57, at 7. And, without preventing Defendants from continuing to misuse Plaintiff's misappropriated client list, StrikePoint still faces this type of irreparable and difficult-to-quantify harm. Indeed, without providing some form of injunctive relief, Plaintiff is potentially and unjustifiably subject to repeated litigation in this matter going forward. In other words, Plaintiff has no reason to believe that Defendants Sabolyk[2] and GAA will cease using Plaintiff's protected information.

As to the additional equitable factors evaluated when granting injunctive relief, the Court addresses those below with respect to the required modifications of the proposed permanent injunction.

**c.     Language of the Proposed Permanent Injunction is Too Broad.**

However, the Court agrees with Defendants that the language of the permanent injunction is too far reaching. Defendants are incorrect in their position that CUTSA only allows for injunctions compelling affirmative acts. While Cal Civ. Code § 3426.2(c) speaks to injunctions compelling affirmative acts, Cal. Civ. Code § 3426.2 generally does not limit the form of

---

[2]The Court notes that Defendants represent that Sabolyk no longer works for GAA. But Plaintiff is not required to assume that this bare assertion means Sabolyk will no longer engage in misconduct going forward.

9

1  injunctive relief. *See* Cal Civ. Code § 3426.2(a) ("Actual or threatened misappropriation may be
2  enjoined."); *see e.g., Vacco Indus., Inc. v. Van Den Berg*, 5 Cal. App. 4th 34, 54 (1992) ("The
3  court's act of enjoining defendants' further use and enjoyment of [plaintiff's] trade secret
4  [pursuant to Cal. Civ. Code § 3426.2] was entirely appropriate."). Thus, the plain language of
5  the statute provides for both prohibitory and mandatory injunctions.

6  Yet, the proposed permanent injunction, as Defendants posit, reaches conduct that this
7  Court cannot properly enjoin. The parties discuss these concerns in their briefing with respect to
8  the balance of hardships and public interest at stake in issuing the injunction in its present form.
9  In other words, the parties dispute the extent to which the permanent injunction, as presently
10 written, prohibits lawful competition. For example, "[a] former employee has the right to
11 engage in a competitive business for himself and to enter into competition with his former
12 employer, even for the business of those who had formerly been the customers of his former
13 employer, *provided such competition is fairly and legally conducted*." *Cont'l Car-Na-Var Corp.*
14 *v. Moseley*, 24 Cal. 2d 104, 110 (1944) (emphasis added). Furthermore, "[t]he [C]UTSA
15 definition of 'misappropriation' has been clarified by case law which establishes that the right to
16 announce a new affiliation, even to trade secret clients of a former employer, is basic to an
17 individual's right to engage in fair competition, and that the common law right to compete fairly
18 and the right to announce a new business affiliation have survived the enactment of the
19 [C]UTSA." *MAI Systems Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 521 (9th Cir. 1993)
20 (citing *Am. Credit Indem. Co. v. Sacks*, 213 Cal. App. 3d 622, 634-35 (1989). In articulating an
21 injunction that both adequately protects StrikePoint's trade secret client list and that also
22 recognizes Defendants' right to engage in lawful competition, the Court finds particularly
23 helpful the opinion of the California Court of Appeal in *Whitted v. Williams*, 226 Cal. App. 2d
24 52 (1964). As the *Whitted* Court stated:

25    Where trade secrets obtained by a former employee are not used by
26    him, or his subsequent employer, in the solicitation of business for
27    the latter, no ground for an injunction exists. For this reason the
28    solicitation provision of the injunction was too broad. For like

10

>       reason the provision thereof enjoining receipt or acceptance of
>       further business from all customers of the plaintiff solicited by either
>       of the defendants is too broad. The receipt or acceptance of further
>       business by the defendant [] from former customers of the plaintiff
>       who were not solicited or are not retained through the use of the
>       subject trade secrets, may not be enjoined.

*Id.* at 59.

With this reasoning in mind, the Court is particularly concerned about the rights of investing clients to take their business wherever they choose, especially where they have been in no way implicated by legal wrongdoing. Thus, Part 1(a) of the proposed permanent injunction causes the Court no concern as it only reaches use of the trade secret information for improper solicitation. However, Parts 1(b) and 1(c) trouble the Court because those provisions potentially improperly infringe on the rights of StrikePoint clients to seek out new advisors of their choosing, especially if they wish to take business to GAA because the clients prefer GAA's services. For example, the Court recognizes that StrikePoint means to only prevent Defendants from accepting business from StrikePoint clients whom Defendants solicited in the past. However, to the extent these individuals have not already transferred their accounts to GAA but, in the future, with no new acts of solicitation by Defendants, decide that they do in fact want to use Defendants' services, this provision will prevent them from doing so even though they have violated no laws. The Court finds that such relief going forward, with no additional acts of current or future solicitation, cannot be justified and improperly punishes StrikePoint clients. In addition, the Court finds that, going forward, Part 1(a) properly prohibits Defendants Sabolyk and GAA from soliciting StrikePoint clients whose information was improperly misappropriated by Defendants, and preventing future acts of solicitation necessarily prevents improperly accepting business from those clients.

However, as to past acts of solicitation, again the Court finds that preventing the future acceptance of business is too far-reaching with no new solicitous conduct. The Court is cognizant that Plaintiff might feel that by striking such provisions, the Court is awarding

11

1  Defendants' past acts of improper solicitation.  However, again, the right of the investing public
2  is paramount here, and the other provisions of the injunction adequately protect Plaintiff (by, for
3  example, requiring Defendants to purge and return any misappropriated records) while
4  preserving the rights of innocent parties.  *See also, Barney v. Burrow*, 558 F. Supp. 2d 1066,
5  1084 (E.D. Cal. 2008) ("the public interest is better served with open competition in the
6  securities field and access to advisors of clients' choice").

7  Similarly, as to Part 1(d), Defendants contend that the language stating that Defendants
8  cannot "use[], disclos[e,] or transmit[] for any purpose...the information contained in the records
9  of Plaintiff" is likewise too broad because it infringes on the individual Defendants right to
10 announce their new business affiliation.  As written, with the broad "for any purpose" language,
11 the Court agrees.  In addition, the Court finds this provision superfluous.  In other words, Part
12 1(a) already prevents Defendants from improperly using Plaintiff's trade secret information
13 while Part 2 requires Defendants to return any wrongfully obtained records and otherwise purge
14 their systems of such information.  Thus, another provision requiring Defendants not to use or
15 disclose Plaintiff's protected information is unnecessary.  The remaining provisions of the
16 proposed permanent injunction do not trouble the Court.

17 In addition, the Court acknowledges that it received an untimely declaration from
18 Christopher Lamitie ("Lamitie") in support of Defendants' opposition to the instant Motion (the
19 "Lamatie Dec.").  By that declaration, Lamitie represents that he is the "Systems Administrator"
20 for Defendant GAA.  He further contends that he "removed all contact information, including
21 names, addresses, telephone numbers, and email addresses from GAA's CRM data base of any
22 and all individuals and/or entities of names and contact information ever entered by or through
23 Aimee Sabolyk or John Mondragon except for the contact information of existing GAA clients."
24 Lamatie Dec., ¶1.  Plaintiff objects to the Lamatie Dec. for a number of reasons.  First, Plaintiff
25 points out that under Local Rule 7-12, the Court can decline to consider any untimely filed
26 documents.  *See* LOCAL R. 7-12.  Plaintiff also argues that the declaration, consisting only of the
27 single paragraph quoted above, is insufficient to prove that Defendant GAA will not continue to
28 solicit StrikePoint clients going forward, especially as the jury findings support a history of

12

1  unreliable statements made by Defendants in this case.  Finally, Plaintiff raises a number of
2  evidentiary objections to the declaration.
3       While recognizing that the Lamatie Dec. is cursory in many respects and clearly does not
4  justify a complete denial of the instant Motion, the Court declines to strike it.  Instead, the Court
5  finds that the Lamatie Dec., in conjunction with the already discussed imprecise Special Verdict
6  Form, warrants an additional modification to the proposed permanent injunction.  Specifically,
7  the Court finds that equitable considerations warrant an expiration date for the entered
8  permanent injunction.  After one year from the entry date of the permanent injunction, the Court
9  is confident that all improperly obtained information will be returned to Plaintiff by Defendants.
10 In addition, with this passage of time, the information forming the subject matter of this lawsuit
11 (i.e. any improperly obtained names and contact information) will have grown stale with the
12 passage of time and, if Defendants at that time form business relationships with any StrikePoint
13 clients, such hypothetical future conduct cannot likely be traced back to the alleged wrongdoing
14 here.  Thus, as an addition to Plaintiff's proposed order, the Court includes a provision providing
15 for the expiration of the permanent injunction after one year of its entry date.

16       **d.     Injunctive Relief against Defendant Mondragon is Unavailable.**

17       Plaintiff does not dispute that Defendant Mondragon was not found liable by the jury on
18 Plaintiff's trade secret misappropriation and breach of contract claims.  However, Plaintiff
19 argues that Defendant's testimony at trial should subject him to the permanent injunction based
20 on a theory of threatened misappropriation.  Indeed, Plaintiff is correct that Cal. Civ. Code §
21 3426.2 allows for injunctive relief based on "[a]ctual or *threatened* misappropriation."  Cal. Civ.
22 Code § 3426.2(c) (emphasis added).
23       "[A] 'threatened misappropriation' means a threat by a defendant to misuse trade secrets,
24 manifested by words or conduct, where the evidence indicates imminent misuse." *FLIR*
25 *Systems, Inc. v. Parrish,* 174 Cal. App. 4th 1270, 1280 (2009).  Put differently, a plaintiff makes
26 out a claim for threatened misappropriation if three elements are met: (1) plaintiff's trade secret
27 is (2) in the possession of a defendant who (3) either has "misused or disclosed some of those
28 trade secrets in the past" or "intends to improperly use or disclose some of those trade secrets."

*Central Valley General Hosp. v. Smith*, 162 Cal. App. 4th 501, 527-28 (2008).  The *Central Valley* Court also implied that a claim for threatened misappropriation *might* be established where a defendant concedes to having possession of a trade secret and *wrongfully* refuses to return the information to plaintiff.  *See Id*. at 528 ("Counsel argued that a claim for threatened misappropriation is established when a defendant possesses trade secrets and wrongly refuses to return the trade secrets after a demand for their return has been made.  We will assume for purposes of argument that these facts would establish a claim for threatened misappropriation.").  However, "the issuance of an injunction based on a claim of threatened misappropriation requires a greater showing than mere possession by a defendant of trade secrets where the defendant acquired the trade secrets by proper means." *Id*. at 528.

In the instant matter, Plaintiff directs the Court's attention to portions of Defendant Mondragon's trial testimony that allegedly support its claim that Mondragon poses a continued threat to StrikePoint.  First, during his testimony, Mondragon admitted that he had a piece of paper at his apartment with the contact information for some StrikePoint clients.  Pl.'s Request for Judicial Notice ("RJN"), Exh. A, at 20:7-14.  He further indicated that he had not returned the paper to StrikePoint after he left Plaintiff's employ and that he had not gotten Plaintiff's express permission to keep the paper.  *Id*. at 27:9-15 and 57:1-7.  In addition, Mondragon admitted to telephoning some of StrikePoint's clients after he left the company.  *Id*. at 29:14-32:5 and 49:18-50:25.  Mondragon also confirmed that ten of his first thirteen clients at GAA were his previous StrikePoint clients.  *Id*. at 37:14-39:22.  Finally, Mondragon indicated that he entered the names of nine StrikePoint clients into the GAA database.  *Id*. at 43:5-47:11.

However, despite hearing this testimony, the jury found that Mondragon did not breach his CNDA with StrikePoint by "directly or indirectly soliciting [StrikePoint's] trade secret clients[.]"  Sklar Dec., Exh. C, Question 4.  Furthermore, the jury found that Mondragon's conduct did not constitute improper solicitation for purposes of trade secret misappropriation.  *Id*., Exh. B, Question 3.  The Court has a hard time inferring threatened misappropriation based on facts the jury determined did not establish actual breach of contract or actual misappropriation, despite Mondragon's admitted contact with some of his former StrikePoint

clients. Indeed, upon reviewing the portions of the record cited to by Plaintiff, the former StrikePoint clients that Mondragon expressly identifies are now indisputably his clients at GAA and are expressly excluded from the terms of the proposed permanent injunction. His testimony does not indicate that he had contact with any other StrikePoint clients or that he improperly retained the contact information of any additional StrikePoint clients. This record does not demonstrate imminent misuse of Plaintiff's trade secret constituting threatened misappropriation. As a result, Plaintiff has not demonstrated that an injunction including Mondragon in its purview is appropriate in these circumstances. In addition, the Court notes that as an employee of GAA, Mondragon will still, albeit indirectly, be reached by the injunction to a certain extent. Furthermore, to the extent Mondragon ultimately does improperly solicit StrikePoint clients in the future, he will be in breach of his CNDA and subject to liability going forward for these new acts. However, the Court cannot make a finding of imminence warranting the issuance of an injunction against Mondragon at this moment.

Plaintiff also asserts that threatened breach of the CNDA forms a basis for imposing the permanent injunction against Defendant Mondragon. However, Plaintiff relies on the same facts above with respect to its threatened misappropriation argument. For the same reasons why those facts do not demonstrate any threatened, imminent injury to Plaintiff regarding trade secret misappropriation, the Court finds that there is no threatened breach of the CNDA established by Mondragon's trial testimony, and as such, the Court refrains from engaging in a lengthy (re)analysis here. Thus, this argument too fails to support an injunction against Mondragon. Having found no threatened breach or misappropriation on the merits, the Court need not reach Defendants' argument that Plaintiff did not properly plead "threat" claims.

## IV.  DISPOSITION

For the foregoing reasons, the Court hereby GRANTS permanent injunctive relief as to Defendants Sabolyk and GAA but DENIES permanent injunctive relief as to Defendant Mondragon. In so doing, the Court utilizes Plaintiff's proposed permanent injunction, concurrently entered with this order, but STRIKES Parts 1(b), 1(c), and 1(d) from said proposed order. In addition, as addressed *supra*, the Court limits the duration of the entered permanent

1 | injunction to one calendar year from the date the order is entered.

2 | IT IS SO ORDERED.

3 | DATED: August 18, 2009

_____
DAVID O. CARTER
United States District Judge