JEFFREY A. SKLAR, ESQ. (STATE BAR NO 190416)
11845 W. OLYMPIC BLVD., SUITE 905
LOS ANGELES, CALIFORNIA 90064
TELEPHONE (310)575-1529
FACSIMILE  (310) 575-1579
sklarnjustice@msn.com


Attorney for Defendants, GLOBAL
ASSET ADVISORS, LLC, AIMEE
ELIZABETH SABOLYK

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STRIKEPOINT TRADING, LLC, a California limited liability company; and OPTIONEER, LLC, a Nevada limited liability company;<br><br>        Plaintiffs,<br><br>    vs.<br><br>AIMEE ELIZABETH SABOLYK, an individual,  GLOBAL ASSET ADVISORS, LLC, an Illinois limited liability company; and JOHN MATTHEW MONDRAGON<br><br>        Defendants. | Case No. SACV07-1073 DOC (MLGx)<br><br>**NOTICE OF APPEAL TO THE UNITED STATES COURT OF APPEAL FOR THE NINTH CIRCUIT** |

    AIMEE ELIZABETH SABOLYK, GLOBAL ASSET ADVISORS, LLC,

Defendant's herein, appeal to the United States Court of Appeal for the Ninth

Circuit from the PERMNANT INJUNCTION AGAINST AIMEE ELIZABETH

SABOLYK AND GLOBAL ASSET ADVISORS, LLC, and, ORDER

GRANTING IN PART AND DENYING IN PART MOTION FOR PERMANENT

INJUNCTION of the district court, both entered in this case on, August 18, 2009,

and all interlocutory orders that gave rise to that ORDER. A copy of each is

1  attached hereto. Filed concurrently herewith is a Representation statement that

2  contains the names and addresses of the counsel to the parties to these Orders.

3

4

5  Dated: September 17, 2009

6
   Jeffrey A. Sklar
7  Attorney for Defendants GLOBAL ASSET
   ADVISORS, LLC; and AIMEE LIZABETH
8  SABOLYK

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   LAWRENCE J. HILTON (STATE BAR NO. 156524)
        (lhilton@hewittoneil.com)
2   WILLIAM E. HALLE (STATE BAR NO. 150686)
    JENNIFER SUN (STATE BAR NO. 238942)
3   HEWITT & O'NEIL LLP
    19900 MacArthur Boulevard
4   Suite 1050
    Irvine, California 92612
5   Telephone: (949) 798-0500
    Facsimile: (949) 798-0511
6
    Attorneys for Plaintiffs
7   STRIKEPOINT TRADING, LLC and
    OPTIONEER, LLC
8

9              **UNITED STATES DISTRICT COURT**

10             **CENTRAL DISTRICT OF CALIFORNIA**

11                **SOUTHERN DIVISION**

| | |
|---|---|
| 12   STRIKEPOINT TRADING, LLC, a California limited liability company; 13   and OPTIONEER, LLC, a Nevada limited liability company; 14                    Plaintiffs, 15          v. 16   AIMEE ELIZABETH SABOLYK, an 17   individual dba INNOVATIVE OPTION STRATEGIES, and GLOBAL ASSET 18   ADVISORS, LLC an Illinois limited liability company, and JOHN 19   MATTHEW MONDRAGON, an individual, 20                    Defendants 21 | Case No. SACV07-1073 DOC (MLGx)  **PERMANENT INJUNCTION AGAINST DEFENDANTS AIMEE ELIZABETH SABOLYK AND GLOBAL ASSET ADVISORS, LLC**  Date:   August 17, 2009 Time:   8:30 a.m. Ctrm.:   9D  Hon. David O. Carter |

22

23

24

25

26

27

28

H&O #74723 v1

3

1       The Court, having considered Plaintiff STRIKEPOINT TRADING, LLC's

2    Motion for Permanent Injunction, the supporting Memorandum of Points and

3    Authorities, and all other matters of which the Court may properly take judicial

4    notice, as well as all papers filed in opposition and reply, and having heard the

5    arguments of counsel, and finding that good cause exists,

6       IT IS HEREBY ORDERED as follows:

7       1.    Defendants AIMEE ELIZABETH SABOLYK ("Sabolyk") and

8    GLOBAL ASSET ADVISORS, LLC ("GAA") (collectively, "Defendants"),

9    directly and indirectly, and whether alone or in concert with others, including any

10    agent, representative, officer, or employee of GAA, are hereby enjoined from:

11       (a)    soliciting any business from, or initiating any further contact or

12       communication with, any clients of Plaintiff (except for the individuals listed

13       in Paragraph 3 of this Order) whom Sabolyk or JOHN MATTHEW

14       MONDRAGON ("Mondragon") served, or whose name became known to

15       them while in the employ of Plaintiff, for the purpose of inviting,

16       encouraging, or requesting the transfer of any accounts from Plaintiff.

17       2.    Defendants, and anyone acting in concert or participation with

18    Defendants, including Defendants' counsel and any agent, employee, officer or

19    representative of GAA, are hereby ordered to return to Plaintiff's Mission Viejo,

20    California office any and all still existing records or information pertaining to

21    Plaintiff's clients which were obtained from Plaintiff, whether in original, copied,

22    computerized, handwritten or any other form, and Defendants are further directed to

23    purge any such information from their possession, custody, or control, within 24

24    hours of notice to Defendants or their counsel of the entry of the Permanent

25    Injunction; provided, however, that any information so purged shall be printed prior

26    to purging and be returned to Plaintiff.  Defendants are not required to purge any

27    information pertaining to the individuals listed in Paragraph 3 of this Order.

28

1    3.    The parties have stipulated that the following individuals currently have
2  or have had accounts with GAA:

3          (a)    Dan Flaherty;

4          (b)    John Kendall;

5          (c)    James Lohmann;

6          (d)    Stephen Spencer;

7          (e)    Virginia Lohmann;

8          (f)    Fred Lohmann;

9          (g)    Chris Wood;

10         (h)    Michael Kessler;

11         (i)    Tim Smith;

12         (j)    James G. Spencer;

13         (k)    Greg Fasiang;

14         (l)    Dennis Anderson;

15         (m)    Charles Hull;

16         (n)    Martin Clarke;

17         (o)    David Stange;

18         (p)    David Tan;

19         (q)    John MacDonald;

20         (r)    James Meyer;

21         (s)    Duane Riddle; and,

22         (t)    Pramil Kumar.

23    4.    This Order shall expire one calendar year after the date of its entry.

24

25

26  Dated: August 18, 2009

27                                    UNITED STATES DISTRICT JUDGE

28



# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STRIKEPOINT TRADING, LLC, a California limited liability company, and OPTIONEER, LLC, a Nevada limited liability company,<br><br>    Plaintiff(s),<br><br> v.<br><br>AIMEE ELIZABETH SABOLYK, an individual dba INNOVATIVE OPTION STRATEGIES, and GLOBAL ASSET ADVISORS, LLC, an Illinois limited liability company, and JOHN MATTHEW MONDRAGON, an individual,<br><br>    Defendant(s). | CASE NO. SACV 07-1073 DOC (MLGx)<br><br>O R D E R GRANTING IN PART AND DENYING IN PART MOTION FOR PERMANENT INJUNCTION |

Before the Court is Plaintiff StrikePoint Trading, LLC's ("StrikePoint) Motion for a Permanent Injunction against Defendants Aimee Elizabeth Sabolyk ("Sabolyk"), Global Asset Advisors, LLC ("GAA"), and John Matthew Mondragon ("Mondragon") (the "Motion"). After considering the moving, opposing, and replying papers, as well as the parties' oral argument, the Court hereby rules as follows:

## I. PROCEDURAL AND FACTUAL BACKGROUND

This matter came before a jury on Plaintiff's trade secret misappropriation claim against

1  all Defendants and breach of contract claims against Sabolyk and Mondragon.[1]  The trial

2  commenced on March 10, 2009, and on March 16, 2009, the jury reached its verdict.

3  The jury received the following instructions regarding StrikePoint's claim for

4  misappropriation of trade secret:

> StrikePoint claims that Defendants GAA, Aimee Sabolyk, and/or
>
> John Mondragon have misappropriated a trade secret.  To succeed on
>
> this claim, StrikePoint must prove *all* of the following:
>
> (1) That StrikePoint owned the client list;
>
> (2) That the client list was a trade secret at the time of the
>
> misappropriation;
>
> (3) That that defendant improperly used or disclosed the trade secret;
>
> (4) That StrikePoint was harmed or that that defendant was unjustly
>
> enriched; and
>
> (5) That that defendant's use or disclosure was a substantial factor in
>
> causing StrikePoint's harm or that defendant to be unjustly enriched.

16  Sklar Dec. in Supp. of Defs.'s Opp. ("Sklar Dec."), Exh. A (emphasis added).

17  Post-deliberation, the jury returned the following verdict on the trade secret

18  misappropriation claim using the provided Special Verdict Form.  *See* Sklar Dec., Exh. B.  First,

19  the jury found that StrikePoint owned the client list.  *Id.* at Question 1.  Second, the jury

20  determined that the client list was a trade secret.  *Id.* at Question 2.  Third, the jury found that

21  Defendant Sabolyk, but not Defendant Mondragon, solicited clients on the list.  *Id.* at Question

22  3.  Fourth, the jury found that Defendants Sabolyk and GAA "misappropriated the client list by

23  improperly using the client list[.]"  *Id.* at Question 4.  Fifth, the jury found that Defendant

---

25  [1]By this Court's December 22, 2008 Order regarding Defendants' motion for full
summary judgment, the Court dismissed Plaintiff's claims for violation of the Computer
26  Fraud and Abuse Act (18 U.S.C. § 1030), common law unfair competition, and tortious
interference with contractual relationship.  *See* Order Granting in Part and Denying in
27  Part Defendants' Motion for Summary Judgment, Doc. No. 113.  StrikePoint has
allegedly abandoned its trade libel claim.

⑦

1   Sabolyk, but not Defendant Mondragon, "misappropriated the client list by improperly

2   disclosing the client list to GAA[.]" *Id.* at Question 5. Sixth, the jury found that StrikePoint was

3   harmed by Defendants Sabolyk and GAA's missappropriation of the list. *Id.* at Question 6.

4   However, the jury found that the misappropriation of the client list by Defendants Sabolyk and

5   GAA was not a substantial factor in causing harm to StrikePoint. *Id.* at Question 7; *see also*, *Id.*

6   at Question 8 (not awarding damages as a result of preceding substantial factor question). The

7   jury also found that Defendants Sabolyk and GAA were not unjustly enriched by the

8   misappropriation of the client list. *Id.* at Question 9.

9        As to Plaintiff's breach of contract claims against Defendants Sabolyk and Mondragon,

10  the jury found that Defendant Sabolyk breached her confidentiality/nondisclosure agreement

11  ("CNDA") with Plaintiff and awarded Plaintiff $93,000.00 in lost profits and $9,300.00 in lost

12  future profits, for a total award against Sabolyk of $102,300.00. *See* Sklar Dec., Exh. C.

13  However, the jury found that Defendant Mondragon did not breach the CNDA "by directly or

14  indirectly soliciting StrikePoint Trading LLC's trade secret clients." *Id.* at Question 4.

15       Upon Plaintiff StrikePoint's request, the Court held a post-trial status conference with the

16  parties on June 1, 2009, in order to address any remaining issues after the jury verdict. *See*

17  Plaintiff [StrikePoint's] Request for Order Setting a Post-Trial Status Conference, Doc. No. 167,

18  at 2 ("WHEREAS, Plaintiff's claims against Sabolyk and GAA for violation of California

19  Business and Professions Code section 17200 ("Section 17200"), attorneys' fees under the

20  UTSA and permanent injunctive relief, which were not triable to the jury, remain to be argued

21  before and determined by the Court"). At that hearing Plaintiff articulated its intent to file

22  certain post-trial motions. As a result, the Court set a briefing schedule and set a hearing on any

23  contemplated motions for August 10, 2009 (the Court, on its own motion, moved the hearing

24  date to August 17, 2009). Despite reference to other post-trail matters (i.e. attorney's fees and

25  Plaintiff's Section 17200 claim), only the instant Motion for a Permanent Injunction followed.

26       By its request for a permanent injunction, Plaintiff seeks relief against all named

27  Defendants in three parts. Specifically, part one of the proposed injunction enjoins Defendants

28  from soliciting any of Plaintiff's clients served by Mondragon or Sabolyk or whose names

1  became known to the individual Defendants while they worked for Plaintiff. In addition, the

2  injunction, as currently worded, enjoins Defendants from accepting any business or account

3  transfers from Plaintiff's clients whom Defendants solicited at any time in the past. This part

4  also precludes Defendants from accepting any business from any client of Plaintiff "whose

5  records or information Defendants used in violation of their contractual and trade secret

6  obligations to Plaintiff...and any client...whom Defendants may have contacted through the use

7  of [such] information." Proposed Permanent Injunction, Part 1(c). Finally, part one prevents

8  Defendants from "using, disclosing, or transmitting for any purpose, including the solicitation or

9  acceptance of business or account transfers, the information contained in the records of

10  Plaintiff." *Id.* at Part 1(d). Part two of the proposed permanent injunction requires Defendants,

11  and anyone acting in concert with Defendants, to return to Plaintiff "any and all records or

12  information pertaining to Plaintiff's clients...[and further directs Defendants] to purge any such

13  information from their possession, custody, or control, within 24 hours of notice to Defendants

14  or their counsel of the entry of the Permanent Injunction." *Id.* at Part 2. By part three, the

15  proposed permanent injunction includes a list of twenty (20) individuals who have or currently

16  have accounts with GAA that the parties stipulate are excluded from the terms of the injunction.

17      A final judgment in this matter has yet to be entered by the Court.

18  **II.   LEGAL STANDARD**

19      Plaintiff raises three grounds for the granting of a permanent injunction by this Court.

20  First, StrikePoint argues that a permanent injunction should issue pursuant to California's

21  Uniform Trade Secret Act. Second, Plaintiff argues that California's Unfair Competition Laws

22  provide for injunctive relief here. Finally, Plaintiff argues that principles of equity and the

23  traditional four-factor test for granting a permanent injunction are satisfied by the instant case.

24      California's Uniform Trade Secrets Act ("CUTSA") provides for injunctive relief. Cal.

25  Civ. Code § 3426.2. Under that provision, "[a]ctual or threatened misappropriation may be

26  enjoined." Cal. Civ. Code § 3426.2(a). "Upon application to the court, an injunction shall be

27  terminated when the trade secret has ceased to exist, but the injunction may be continued for an

28  additional period of time in order to eliminate commercial advantage that otherwise would be

1  derived from the misappropriation." *Id.* Furthermore, "[i]n appropriate circumstances,

2  affirmative acts to protect a trade secret may be compelled by court order." Cal. Civ. Code §

3  3426.2(c).

4       California's unfair competition law, codified as California Business and Professions Code

5  § 17200 ("Section 17200"), prohibits "any unlawful, unfair or fraudulent business act or

6  practice." Cal. Bus. & Prof. Code § 17200. Parties may also seek injunctive relief for a

7  violation of California' unfair competition law:

8          Any person who engages, has engaged, or proposes to engage in

9          unfair competition may be enjoined in any court of competent

10         jurisdiction. The court may make such orders or judgments...as may

11         be necessary to prevent the use or employment by any person of any

12         practice which constitutes unfair competition, as defined in this

13         chapter, or as may be necessary to restore to any person in interest

14         any money or property, real or personal, which may have been

15         acquired by means of such unfair competition.

16  Cal. Bus. & Prof. Code § 17203.

17       Traditionally, a plaintiff must satisfy a four-factor test in order to receive a permanent

18  injunction. Specifically, "[a] plaintiff must demonstrate: (1) that it has suffered an irreparable

19  injury; (2) that remedies at law, such as monetary damages, are inadequate to compensate for

20  that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a

21  remedy in equity is warranted; and (4) that the public interest would not be disserved by a

22  permanent injunction." *eBay Inc. v. MerchExchange, L.L.C.*, 547 U.S. 388, 391, 126 S. Ct. 1837

23  (2006); *see also, Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312, 102 S. Ct. 1798 (1982)

24  ("The Court has repeatedly held that the basis for injunctive relief in the federal courts has

25  always been irreparable injury and the inadequacy of legal remedies.").

26  **III.   DISCUSSION**

27      **a.    Plaintiff's Section 17200 Claim is Preempted.**

28      As a preliminary matter, Defendants argue that Plaintiff cannot premise its entitlement to

*10*

1  a permanent injunction against Defendants on its Section 17200 claim because the Section

2  17200 claim is preempted by StrikePoint's CUTSA claim.  Defendants direct the Court to a

3  recent California Court of Appeal's opinion in which the court held that CUTSA preempts

4  Section 17200 claims where the claims are based on the same common nucleus of facts.  *See*

5  *K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*, 171 Cal. App. 4th 939, 954

6  (2009).  In so ruling, the California Court of Appeal indicated that it "agree[d] with the federal

7  cases applying California law, which hold that CUTSA "preempts common law claims that are

8  'based on the same nucleus of facts as the misappropriation of trade secrets claim for relief.'"

9  *Id.* at 958 (*quoting Digital Envoy, Inc. v. Google, Inc.*, 370 F. Supp. 2d 1025, 1035 (N.D. Cal.

10  2005).  By adopting the reasoning in such federal cases, the *K.C. Multimedia* Court also ruled

11  that CUTSA preemption should apply to both common law and statutory unfair competition

12  claims where the claims are based on the same operative facts.  *See Id.* at 962 ("As with other

13  causes of action, appellant's statutory unfair competition claim rests squarely on its factual

14  allegations of trade secret misappropriation...That being so, this claim is also preempted.").

15      As Defendants point out, in ruling on Defendants' motion for summary judgment, this

16  Court relied on the reasoning in *Digital Envoy* and found that Plaintiff's claims for common law

17  unfair competition and tortious interference with contract were preempted by CUTSA, finding

18  that those claims were based on the same operative facts as Plaintiff's CUTSA claims.  *See*

19  Order Granting in Part and Denying in Part Defendants' Mot. for Summ. J., Doc. No. 113, at 28-

20  29.  With the California Court of Appeal adopting and extending the reasoning of *Digital Envoy*

21  to statutory unfair competition, the Court sees no reason why this claim too would not be

22  preempted.  Indeed, Plaintiff's Section 17200 claim rests on the same factual allegations as those

23  contained in its CUTSA claim.

24      The Court acknowledges that in bringing its Motion for Permanent Injunction, StrikePoint

25  has not noticed the motion as one in which the Court is to decide the substantive merits of its

26  Section 17200 claim.  However, by requesting injunctive relief based on Section 17200,

27  StrikePoint clearly requires this Court to determine if StrikePoint has a viable Section 17200

28  claim.  *See, e.g.*, Pl.'s Mot. at 12 (arguing that Plaintiff is entitled to injunctive relief because the

1   evidence demonstrates that Mondragon has committed unfair business practices in violation of

2   Section 17200). Thus, the Court determines that the issue is before it. However, in its reply

3   briefing, Plaintiff provides no opposition to Defendants' position that Plaintiff's Section 17200

4   claim is preempted based on the reasoning in *K.C. Multimedia*. Instead, without citing to *K.C.*

5   *Multimedia* or even expressly referring to Section 17200, Plaintiff appears to concede the

6   preemption point by arguing that it is nevertheless entitled to a permanent injunction either based

7   on CUTSA or due to the CNDAs signed by the individual Defendants which refer to injunctive

8   relief. Thus, the Court finds Plaintiff's Section 17200 claim preempted.

9      **b.   Injunctive Relief Against Defendants Sabolyk and GAA is Appropriate.**

10      In arguing the instant Motion, the parties dispute the import and reach of the jury verdict.

11   Specifically, the parties dispute whether Plaintiff prevailed on its trade secret misappropriation

12   claim and therefore, whether that claim or any of the jury findings related to that claim can

13   support injunctive relief.

14      For example, there is no dispute that in utilizing the Special Verdict Form, the jury found

15   that Defendant Sabolyk solicited clients from Plaintiff's trade secret client list. Sklar Dec., Exh.

16   B, Question 3. In addition, the jury found that Defendants Sabolyk and GAA "misappropriated

17   the client list by improperly using the client list." *Id.* at Question 4. The jury also specifically

18   found that Defendant Sabolyk "misappropriated the client list by improperly disclosing the client

19   list to GAA." *Id.* at Question 5. And the jury made a finding that Defendant Sabolyk and

20   Defendant GAA harmed StrikePoint by misappropriating its client list. *Id.* at Question 6.

21      However, the current point of contention centers on the jury's response to Question 7, in

22   which the jury found that Defendants Sabolyk and GAA's "misappropriation of the client list

23   was [not] a substantial factor in causing harm to [StrikePoint]." *Id.* at Question 7. Defendants

24   contend that by this finding, as well as the jury's subsequent finding that Sabolyk and GAA were

25   also not unjustly enriched by their misappropriation of the client list (*Id.* at Question 9), the jury

26   found that Plaintiff lost on its trade secret misappropriation claim. And without prevailing on

27   the merits of this claim, Defendants argue, the Court cannot provide injunctive relief under

28   CUTSA. The Defendants point to the jury instruction regarding the trade secret

(12)

1   misappropriation claim that indicates as the fifth element of the cause of action "that defendant's

2   use or disclosure was a substantial factor in causing StrikePoint's harm or that defendant to be

3   unjustly enriched." Sklar Dec., Exh. A.

4          While noting the concerns raised by Defendants, the Court has a hard time concluding

5   that despite the jury's findings that both GAA and Sabolyk "misappropriated the client list by

6   improperly using the client list" (Sklar. Dec., Exh. B, Question 4), that Sabolyk personally

7   solicited clients on that list (*Id.* at Question 3) and that "StrikePoint Trading, LLC was harmed

8   by the misappropriation of its client list" (*Id.* at Question 6) by Sabolyk and GAA, StrikePoint is

9   still not entitled to some form of injunctive relief. Stated differently, because the jury found that

10  Defendants Sabolyk and GAA improperly misappropriated Plaintiff's clients list and used that

11  list in a way that caused at least some harm to Plaintiff, Plaintiff is entitled to some form of

12  protection preventing Defendants from using Plaintiff's trade secret information *going forward*

13  even if there was no calculated past damages at the time of trial. *See Polo Fashions, Inc v. Dick*

14  *Bruhn, Inc.*, 793 F.2d 1132, 1135-36 (9th Cir. 1986) (in the trademark infringement context,

15  noting that "cessation of unlawful conduct can moot such a dispute," but also recognizing that

16  "the reform of the defendant must be irrefutably demonstrated and total" (internal quotes and

17  citations omitted")); *see also, Oculus Innovative Sciences, Inc. v. Nofil Corp.*, No. C. 06-1686-

18  SI, 2007 WL 4044867, * 1. *6, *9-10 (N.D. Cal. Nov. 15, 2007) (holding that to prevail on its

19  trade secret misappropriation claim, plaintiff need prove "(1) the existent of a trade secret, and

20  (2) misappropriation," and thus awarding permanent injunctive relief on that basis alone).

21         Indeed, while the Court recognizes that the jury found that the substantial factor element

22  was not met, Defendants still must deal with the consequences of the imprecise Special Verdict

23  Form jointly drafted by the parties. In other words, the Court will not ignore the specific jury

24  findings previously identified in this order that unequivocally identify wrongdoing on the part of

25  Sabolyk and GAA with respect to Plaintiff's protectable trade secret. In addition, there is no

26  dispute that StrikePoint prevailed on its breach of contract claim against Sabolyk; while the

27  Court does not find that parties can contract for injunctive relief where the factors for equitable

28  relief are not otherwise met, the Court at least notes that as in *Oculus*, the provisions of

(13)

1  Sabolyk's CNDA also refer to some form of injunctive relief as to Sabolyk, as the CNDA

2  expressly identifies that Sabolyk agreed StrikePoint might be irreparably harmed if Sabolyk

3  disclosed the information and that injunctive relief might be necessary.  *See* Pl.'s Mot. at 8, n.2;

4  *see also, Oculus*, No. C 06-1686-SI at*9 (noting that text of CNDA also supported issuance of

5  an injunction where parties agreed that plaintiff might be subject to irreparable harm upon

6  breach and that contract could be enforced in equity).

7          Defendants also contend that Plaintiff cannot show that it has been or will be irreparably

8  harmed without injunctive relief, especially as Plaintiff presented expert testimony regarding the

9  monetary damages it had suffered at trial.  However, the Court entered a preliminary injunction

10  in this matter finding that "Defendants' continued solicitation of StrikePoint clients results in a

11  loss of business and customer goodwill that is difficult to quantify."  *See* Order Granting

12  Plaintiff's Motion for Preliminary Injunction, Doc. No. 57, at 7.  And, without preventing

13  Defendants from continuing to misuse Plaintiff's misappropriated client list, StrikePoint still

14  faces this type of irreparable and difficult-to-quantify harm.  Indeed, without providing some

15  form of injunctive relief, Plaintiff is potentially and unjustifiably subject to repeated litigation in

16  this matter going forward.  In other words, Plaintiff has no reason to believe that Defendants

17  Sabolyk[2] and GAA will cease using Plaintiff's protected information.

18          As to the additional equitable factors evaluated when granting injunctive relief, the Court

19  addresses those below with respect to the required modifications of the proposed permanent

20  injunction.

21          **c.     Language of the Proposed Permanent Injunction is Too Broad.**

22          However, the Court agrees with Defendants that the language of the permanent injunction

23  is too far reaching.  Defendants are incorrect in their position that CUTSA only allows for

24  injunctions compelling affirmative acts.  While Cal Civ. Code § 3426.2(c) speaks to injunctions

25  compelling affirmative acts, Cal. Civ. Code § 3426.2 generally does not limit the form of

26  _____

27          [2]The Court notes that Defendants represent that Sabolyk no longer works for GAA.
But Plaintiff is not required to assume that this bare assertion means Sabolyk will no

28  longer engage in misconduct going forward.

(14)

1   injunctive relief. *See* Cal Civ. Code § 3426.2(a) ("Actual or threatened misappropriation may be

2   enjoined."); *see e.g., Vacco Indus., Inc. v. Van Den Berg*, 5 Cal. App. 4th 34, 54 (1992) ("The

3   court's act of enjoining defendants' further use and enjoyment of [plaintiff's] trade secret

4   [pursuant to Cal. Civ. Code § 3426.2] was entirely appropriate."). Thus, the plain language of

5   the statute provides for both prohibitory and mandatory injunctions.

6          Yet, the proposed permanent injunction, as Defendants posit, reaches conduct that this

7   Court cannot properly enjoin. The parties discuss these concerns in their briefing with respect to

8   the balance of hardships and public interest at stake in issuing the injunction in its present form.

9   In other words, the parties dispute the extent to which the permanent injunction, as presently

10  written, prohibits lawful competition. For example, "[a] former employee has the right to

11  engage in a competitive business for himself and to enter into competition with his former

12  employer, even for the business of those who had formerly been the customers of his former

13  employer, *provided such competition is fairly and legally conducted.*" *Cont'l Car-Na-Var Corp.*

14  *v. Moseley*, 24 Cal. 2d 104, 110 (1944) (emphasis added). Furthermore, "[t]he [C]UTSA

15  definition of 'misappropriation' has been clarified by case law which establishes that the right to

16  announce a new affiliation, even to trade secret clients of a former employer, is basic to an

17  individual's right to engage in fair competition, and that the common law right to compete fairly

18  and the right to announce a new business affiliation have survived the enactment of the

19  [C]UTSA." *MAI Systems Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 521 (9th Cir. 1993)

20  (citing *Am. Credit Indem. Co. v. Sacks*, 213 Cal. App. 3d 622, 634-35 (1989). In articulating an

21  injunction that both adequately protects StrikePoint's trade secret client list and that also

22  recognizes Defendants' right to engage in lawful competition, the Court finds particularly

23  helpful the opinion of the California Court of Appeal in *Whitted v. Williams*, 226 Cal. App. 2d

24  52 (1964). As the *Whitted* Court stated:

25          Where trade secrets obtained by a former employee are not used by

26          him, or his subsequent employer, in the solicitation of business for

27          the latter, no ground for an injunction exists. For this reason the

28          solicitation provision of the injunction was too broad. For like



1    reason the provision thereof enjoining receipt or acceptance of

2    further business from all customers of the plaintiff solicited by either

3    of the defendants is too broad.  The receipt or acceptance of further

4    business by the defendant [] from former customers of the plaintiff

5    who were not solicited or are not retained through the use of the

6    subject trade secrets, may not be enjoined.

7  *Id.* at 59.

8        With this reasoning in mind, the Court is particularly concerned about the rights of

9    investing clients to take their business wherever they choose, especially where they have been in

10   no way implicated by legal wrongdoing.  Thus, Part 1(a) of the proposed permanent injunction

11   causes the Court no concern as it only reaches use of the trade secret information for improper

12   solicitation.  However, Parts 1(b) and 1(c) trouble the Court because those provisions potentially

13   improperly infringe on the rights of StrikePoint clients to seek out new advisors of their

14   choosing, especially if they wish to take business to GAA because the clients prefer GAA's

15   services.  For example, the Court recognizes that StrikePoint means to only prevent Defendants

16   from accepting business from StrikePoint clients whom Defendants solicited in the past.

17   However, to the extent these individuals have not already transferred their accounts to GAA but,

18   in the future, with no new acts of solicitation by Defendants, decide that they do in fact want to

19   use Defendants' services, this provision will prevent them from doing so even though they have

20   violated no laws.  The Court finds that such relief going forward, with no additional acts of

21   current or future solicitation, cannot be justified and improperly punishes StrikePoint clients.  In

22   addition, the Court finds that, going forward, Part 1(a) properly prohibits Defendants Sabolyk

23   and GAA from soliciting StrikePoint clients whose information was improperly misappropriated

24   by Defendants, and preventing future acts of solicitation necessarily prevents improperly

25   accepting business from those clients.

26        However, as to past acts of solicitation, again the Court finds that preventing the future

27   acceptance of business is too far-reaching with no new solicitous conduct.  The Court is

28   cognizant that Plaintiff might feel that by striking such provisions, the Court is awarding



1    Defendants' past acts of improper solicitation.  However, again, the right of the investing public

2    is paramount here, and the other provisions of the injunction adequately protect Plaintiff (by, for

3    example, requiring Defendants to purge and return any misappropriated records) while

4    preserving the rights of innocent parties.  *See also, Barney v. Burrow*, 558 F. Supp. 2d 1066,

5    1084 (E.D. Cal. 2008) ("the public interest is better served with open competition in the

6    securities field and access to advisors of clients' choice").

7        Similarly, as to Part 1(d), Defendants contend that the language stating that Defendants

8    cannot "use[], disclos[e,] or transmit[] for any purpose...the information contained in the records

9    of Plaintiff" is likewise too broad because it infringes on the individual Defendants right to

10   announce their new business affiliation.  As written, with the broad "for any purpose" language,

11   the Court agrees.  In addition, the Court finds this provision superfluous.  In other words, Part

12   1(a) already prevents Defendants from improperly using Plaintiff's trade secret information

13   while Part 2 requires Defendants to return any wrongfully obtained records and otherwise purge

14   their systems of such information.  Thus, another provision requiring Defendants not to use or

15   disclose Plaintiff's protected information is unnecessary.  The remaining provisions of the

16   proposed permanent injunction do not trouble the Court.

17       In addition, the Court acknowledges that it received an untimely declaration from

18   Christopher Lamitie ("Lamitie") in support of Defendants' opposition to the instant Motion (the

19   "Lamatie Dec.").  By that declaration, Lamitie represents that he is the "Systems Administrator"

20   for Defendant GAA.  He further contends that he "removed all contact information, including

21   names, addresses, telephone numbers, and email addresses from GAA's CRM data base of any

22   and all individuals and/or entities of names and contact information ever entered by or through

23   Aimee Sabolyk or John Mondragon except for the contact information of existing GAA clients."

24   Lamatie Dec., ¶1.  Plaintiff objects to the Lamatie Dec. for a number of reasons.  First, Plaintiff

25   points out that under Local Rule 7-12, the Court can decline to consider any untimely filed

26   documents.  *See* Local R. 7-12.  Plaintiff also argues that the declaration, consisting only of the

27   single paragraph quoted above, is insufficient to prove that Defendant GAA will not continue to

28   solicit StrikePoint clients going forward, especially as the jury findings support a history of

1   unreliable statements made by Defendants in this case.  Finally, Plaintiff raises a number of

2   evidentiary objections to the declaration.

3        While recognizing that the Lamatie Dec. is cursory in many respects and clearly does not

4   justify a complete denial of the instant Motion, the Court declines to strike it.  Instead, the Court

5   finds that the Lamatie Dec., in conjunction with the already discussed imprecise Special Verdict

6   Form, warrants an additional modification to the proposed permanent injunction.  Specifically,

7   the Court finds that equitable considerations warrant an expiration date for the entered

8   permanent injunction.  After one year from the entry date of the permanent injunction, the Court

9   is confident that all improperly obtained information will be returned to Plaintiff by Defendants.

10  In addition, with this passage of time, the information forming the subject matter of this lawsuit

11  (i.e. any improperly obtained names and contact information) will have grown stale with the

12  passage of time and, if Defendants at that time form business relationships with any StrikePoint

13  clients, such hypothetical future conduct cannot likely be traced back to the alleged wrongdoing

14  here.  Thus, as an addition to Plaintiff's proposed order, the Court includes a provision providing

15  for the expiration of the permanent injunction after one year of its entry date.

16      **d.    Injunctive Relief against Defendant Mondragon is Unavailable.**

17       Plaintiff does not dispute that Defendant Mondragon was not found liable by the jury on

18  Plaintiff's trade secret misappropriation and breach of contract claims.  However, Plaintiff

19  argues that Defendant's testimony at trial should subject him to the permanent injunction based

20  on a theory of threatened misappropriation.  Indeed, Plaintiff is correct that Cal. Civ. Code §

21  3426.2 allows for injunctive relief based on "[a]ctual or *threatened* misappropriation."  Cal. Civ.

22  Code § 3426.2(c) (emphasis added).

23       "[A] 'threatened misappropriation' means a threat by a defendant to misuse trade secrets,

24  manifested by words or conduct, where the evidence indicates imminent misuse."  *FLIR*

25  *Systems, Inc. v. Parrish,* 174 Cal. App. 4th 1270, 1280 (2009).  Put differently, a plaintiff makes

26  out a claim for threatened misappropriation if three elements are met: (1) plaintiff's trade secret

27  is (2) in the possession of a defendant who (3) either has "misused or disclosed some of those

28  trade secrets in the past" or "intends to improperly use or disclose some of those trade secrets."

1   *Central Valley General Hosp. v. Smith*, 162 Cal. App. 4th 501, 527-28 (2008).  The *Central*

2   *Valley* Court also implied that a claim for threatened misappropriation *might* be established

3   where a defendant concedes to having possession of a trade secret and *wrongfully* refuses to

4   return the information to plaintiff.  *See Id.* at 528 ("Counsel argued that a claim for threatened

5   misappropriation is established when a defendant possesses trade secrets and wrongly refuses to

6   return the trade secrets after a demand for their return has been made.  We will assume for

7   purposes of argument that these facts would establish a claim for threatened misappropriation.").

8   However, "the issuance of an injunction based on a claim of threatened misappropriation

9   requires a greater showing than mere possession by a defendant of trade secrets where the

10  defendant acquired the trade secrets by proper means." *Id.* at 528.

11          In the instant matter, Plaintiff directs the Court's attention to portions of Defendant

12  Mondragon's trial testimony that allegedly support its claim that Mondragon poses a continued

13  threat to StrikePoint.  First, during his testimony, Mondragon admitted that he had a piece of

14  paper at his apartment with the contact information for some StrikePoint clients.  Pl.'s Request

15  for Judicial Notice ("RJN"), Exh. A, at 20:7-14.  He further indicated that he had not returned

16  the paper to StrikePoint after he left Plaintiff's employ and that he had not gotten Plaintiff's

17  express permission to keep the paper.  *Id.* at 27:9-15 and 57:1-7.  In addition, Mondragon

18  admitted to telephoning some of StrikePoint's clients after he left the company.  *Id.* at 29:14-

19  32:5 and 49:18-50:25.  Mondragon also confirmed that ten of his first thirteen clients at GAA

20  were his previous StrikePoint clients.  *Id.* at 37:14-39:22.  Finally, Mondragon indicated that he

21  entered the names of nine StrikePoint clients into the GAA database.  *Id.* at 43:5-47:11.

22          However, despite hearing this testimony, the jury found that Mondragon did not breach

23  his CNDA with StrikePoint by "directly or indirectly soliciting [StrikePoint's] trade secret

24  clients[.]"  Sklar Dec., Exh. C, Question 4.  Furthermore, the jury found that Mondragon's

25  conduct did not constitute improper solicitation for purposes of trade secret misappropriation.

26  *Id.*, Exh. B, Question 3.  The Court has a hard time inferring threatened misappropriation based

27  on facts the jury determined did not establish actual breach of contract or actual

28  misappropriation, despite Mondragon's admitted contact with some of his former StrikePoint

19

1  clients. Indeed, upon reviewing the portions of the record cited to by Plaintiff, the former

2  StrikePoint clients that Mondragon expressly identifies are now indisputably his clients at GAA

3  and are expressly excluded from the terms of the proposed permanent injunction. His testimony

4  does not indicate that he had contact with any other StrikePoint clients or that he improperly

5  retained the contact information of any additional StrikePoint clients. This record does not

6  demonstrate imminent misuse of Plaintiff's trade secret constituting threatened misappropriation.

7  As a result, Plaintiff has not demonstrated that an injunction including Mondragon in its purview

8  is appropriate in these circumstances. In addition, the Court notes that as an employee of GAA,

9  Mondragon will still, albeit indirectly, be reached by the injunction to a certain extent.

10 Furthermore, to the extent Mondragon ultimately does improperly solicit StrikePoint clients in

11 the future, he will be in breach of his CNDA and subject to liability going forward for these new

12 acts. However, the Court cannot make a finding of imminence warranting the issuance of an

13 injunction against Mondragon at this moment.

14      Plaintiff also asserts that threatened breach of the CNDA forms a basis for imposing the

15 permanent injunction against Defendant Mondragon. However, Plaintiff relies on the same facts

16 above with respect to its threatened misappropriation argument. For the same reasons why those

17 facts do not demonstrate any threatened, imminent injury to Plaintiff regarding trade secret

18 misappropriation, the Court finds that there is no threatened breach of the CNDA established by

19 Mondragon's trial testimony, and as such, the Court refrains from engaging in a lengthy

20 (re)analysis here. Thus, this argument too fails to support an injunction against Mondragon.

21 Having found no threatened breach or misappropriation on the merits, the Court need not reach

22 Defendants' argument that Plaintiff did not properly plead "threat" claims.

23 **IV.   DISPOSITION**

24      For the foregoing reasons, the Court hereby GRANTS permanent injunctive relief as to

25 Defendants Sabolyk and GAA but DENIES permanent injunctive relief as to Defendant

26 Mondragon. In so doing, the Court utilizes Plaintiff's proposed permanent injunction,

27 concurrently entered with this order, but STRIKES Parts 1(b), 1(c), and 1(d) from said proposed

28 order. In addition, as addressed *supra*, the Court limits the duration of the entered permanent

20

1  injunction to one calendar year from the date the order is entered.

2  IT IS SO ORDERED.

3  DATED: August 18, 2009

*David O. Carter*

DAVID O. CARTER
United States District Judge

(21)

1

## PROOF OF SERVICE

2      At the time of service, I was over the age of 18 and not a party to the within action. I am employed in Los Angeles County, State of California. My business
3      address is 11845 WEST OLYMPIC BLVD., SUITE 905, LOS ANGELES, CA 90064

4      On  September 17, 2009 I served true and correct copies of the following documents:

5
**NOTICE OF APPEAL TO THE UNITED STATES COURT OF APPEAL**
6      **FOR THE NINTH CIRCUIT**

7      **REPRESENTATION STATEMENT**

8      on the all interested parties in said action by placing a true copy thereof enclosed in a sealed envelope addressed as follows:
9
LAWRENCE J. HILTON
10      WILLIAM E. HALLE
JENNIFER SUN
11      HEWITT & O'NEIL LLP
19900 MacArthur Blvd., Suite 1050
12      Irvine CA 92612

13      **BY MAIL.**  I enclosed the documents in a sealed envelope addressed to the person(s) listed above, and placed the envelope for collection and mailing. I am
14      readily familiar with the practice here of collection and processing correspondence for mailing.  Under that practice it would be deposited with U.S. postal service on
15      that same day with postage thereon fully prepaid at Los Angeles, CA, in the ordinary course of business.
16
BY ELECTRONIC SERVICE: On this day I filed the above listed documents on
17      the United States District Court ECM, where the counsel for all interested parties are signed up for, and recieve service of all Documents and filings in Case No 07-
18      1073, the case number under which the above listed documents were filed.

19

20      I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that I am a member of the bar
21      this court.

22      Executed on September 17, 2009 at Los Angeles, California.

23

24      Jeffrey Sklar

25

26

27

28