**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Case No. SA CV 07-1073-DOC(MLGx)                                                    Date: November 21, 2011
Title: STRIKEPOINT TRADING, LLC, ET AL. V. AIMEE ELIZABETH SABOLYK, ET AL.

PRESENT:

THE HONORABLE DAVID O. CARTER, JUDGE

| Julie Barrera | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

ATTORNEYS PRESENT FOR PLAINTIFFS:     ATTORNEYS PRESENT FOR DEFENDANTS:

NONE PRESENT                                                        NONE PRESENT

PROCEEDING (IN CHAMBERS):  ORDER (1) DENYING DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW OR A NEW TRIAL, AND (2) ORDERING THE DOCKET BE AMENDED TO REFLECT DEFENDANT'S PRO SE STATUS

Before the Court is Defendant Aimee Sabolyk's ("Sabolyk" or "Defendant") motion for judgment as a matter of law, or in the alternative, for a new trial (the "Motion").  (Doc. No. 157).

The Court finds this matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; L.R. 7-15.  The matter is removed from the Court's November 28, 2011 calendar. After considering the moving, opposing, and replying papers thereon, and for the reasons stated below, the Court hereby DENIES the Motion.  The Court grants Plaintiff's unopposed request for judicial notice.

I.      **Appearance of Pro Se Party**

Under Local Rule 83-2.9.1, "[w]henever a party has appeared by an attorney, the party may not thereafter appear or act pro se, except upon order made by the Court after notice to such attorney and to any other parties who have appeared in the action."

Defendant does not state explicitly in her moving or reply papers that she has terminated her relationship with counsel.  The Court assumes, based on Defendant's "pro se" filing of the Motion, that she no longer wishes to be represented by counsel.  Because notice of Defendant's motion was electronically mailed to her counsel through CM/ECF on October 26, 2011, the Court finds the notice

requirement under Local Rule 83-2.9.1 met.  Plaintiff's counsel obviously is aware of this development as they are in receipt of the Motion and filed opposition papers thereto.  Accordingly, the Court orders that Defendant Aimee Sabolyk shall now appear pro se.  The Clerk shall amend the docket to remove Defendant's counsel and reflect this change.

## II.     BACKGROUND

Plaintiff StrikePoint, LLC ("StrikePoint") is a commodity futures and options brokerage firm located in Mission Viejo, California.  Defendant Sabolyk is a former employee of StrikePoint.  Sabolyk left StrikePoint and began working for Defendant Global Asset Advisors ("GAA").  GAA is a commodities and futures brokerage company in Chicago, Illinois.  StrikePoint filed suit against Sabolyk and GAA alleging misappropriation of trade secrets and breach of contract, based on Defendants' alleged use of proprietary StrikePoint client information, as well as other claims not relevant to this Motion.  After the Court granted in part and denied in part Defendants' motion for summary judgment, the remaining claims proceeded to trial.  On March 16, 2009, the jury returned its verdict, finding for StrikePoint on both the misappropriation of trade secrets claim and the breach of contract claim.  The jury based its verdict on findings that StrikePoint owned the client list at issue, and the list was a trade secret.  The jury found that Sabolyk solicited clients from the client list and that Sabolyk and GAA misappropriated the client list.  The jury found harm to StrikePoint under both claims and awarded damages on only the breach of contract claim.  The damages award consists of $93,000 in lost profits and $9,300 in future profits.

On August 18, 2009, the Court entered a permanent injunction, ordering Sabolyk and GAA to refrain from soliciting or contacting any clients of StrikePoint who Defendants became aware of as a result of Sabolyk's employment with StrikePoint for the purpose of getting the clients to transfer their accounts away from StrikePoint.  (Doc. No. 193.)  The injunction expired one year after it was entered.

Defendants appealed the permanent injunction, but by the time oral argument was held, the injunction had expired and the issue was moot.  Upon conclusion of the appeal, the Court entered judgment in favor of StrikePoint on August 29, 2011.  On September 23, 2011, Sabolyk filed a motion for extension of time under Rule 6(b), in which she sought an extra 30 days to file her motion for judgment as a matter of law or a new trial.  On October 11, 2011, the Court granted the request for extension of time to October 27, 2011.  On October 26, 2011, Plaintiff filed the instant Motion.

## III.    LEGAL STANDARD

### A.    Rule 50(b)

When reviewing a renewed motion for judgment as a matter of law after a jury verdict, the Court must "'view the evidence in the light most favorable to the nonmoving party . . . and draw all

reasonable inferences in that party's favor.'" *DSPT Int'l, Inc. v. Nahum*, 624 F.3d 1213, 1218 (9th Cir. 2010) (quoting *Josephs v. Pac. Bell*, 443 F.3d 1050, 1062 (9th Cir. 2006)). "[A] reasonable inference 'cannot be supported by only threadbare conclusory statements instead of significant probative evidence.'" *Lakeside-Scott v. Multnomah Cnty.*, 556 F.3d 797, 802 (9th Cir. 2009) (quoting *Barnes v. Arden Mayfair, Inc.*, 759 F.2d 676, 680-81 (9th Cir. 1985)). However, "'[a] jury's verdict must be upheld if it is supported by substantial evidence, which is evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion.'" *DSPT Int'l*, 624 F.3d at 1218 (quoting *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002)). "A jury verdict should be set aside only when 'the evidence permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict.'" *Id.* (quoting *Josephs*, 443 F.3d at 1062). Judgment as a matter of law is therefore "appropriate when the jury could have relied only on speculation to reach its verdict." *Lakeside-Scott*, 556 F.3d at 803.

### B. Rule 59

Rule 59(a) provides that a new trial may be granted after a jury trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). A new trial is proper if "'the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice.'" *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (quoting *Passantino v. Johnson & Johnson Consumer Prods.*, 212 F.3d 493, 510 n.15 (9th Cir. 2000)). In ruling on a motion for new trial, the court has "'the duty . . . to weigh the evidence as [the court] saw it, and to set aside the verdict of the jury, even though supported by substantial evidence, where, in [the court's] conscientious opinion, the verdict is contrary to the clear weight of the evidence.'" *Id.* at 729 (quoting *Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990)) (alterations in original); *Landes Constr.*, 833 F.2d at 1371 (holding that on a motion for new trial "[t]he judge can weigh the evidence and assess the credibility of witnesses, and need not view the evidence from the perspective most favorable to the prevailing party.").

## IV. DISCUSSION

### A. Untimeliness

Under Federal Rule of Civil Procedure 6(b)(2), the Court "must not extend the time to act under Rules 50(b) and (d), 52(b), 59(b), (d) and (e), and 60(b)." Fed. R. Civ. P. 6(b)(2). Defendant brings her Motion under Rules 50 and 59. (Mot. at 1.) Therefore, Defendant's earlier motion to extend time for the filing of the Motion was improper because the Court lacked authority to grant the requested extension pursuant to Rule 6(b). Although the Court granted the request while overlooking inadvertently this requirement, this cannot change the impact of Rule 6(b)(2). The Court lacked authority to entertain such an extension and the resulting extension was thus void. *Dill v. General Am. Life Ins. Co.*, 525 F.3d 612, 616 (8th Cir. 2008) (finding that district court's grant of extension of time to file Rule 50(b) motion had no effect because such action was barred by Rule 6(b)(2), and concluding

that motion was untimely filed).

A "simple scan of Rule 6(b)(2) would have provided [Defendant] notice that the district court lacked authority to grant an exception of time to file the Rule 50(b) [and Rule 59] motion[s]."[1] *Id.* at 620. Thus, any reliance by Defendant on this order was unreasonable. *See id.* at 620-21 (citing *Pinion v. Dow Chemical*, 928 F.2d 1522, 1534 (11th Cir. 1991) (reliance on district court's unauthorized extension of time to file post-trial motion was unreasonable); *Panhorst v. United States*, 241 F.3d 367, 373 (4th Cir. 2001) ("Because a litigant has a duty to familiarize himself with the [Federal] Rules, which clearly prohibit an extension of time in which to file a Rule 59 motion, we cannot say that appellants' reliance on the district court's acceptance of the submitted order was reasonable"); *Fogel v. Gordon & Glickson, P.C.*, 393 F.3d 727, 731 (7th Cir. 2004) ("when a rule is unambiguous a litigant is not permitted to rely on erroneous advice, even by a court")).

Defendant argues that procedural rules should be relaxed for pro se litigants. (Reply at 2, citing *Haines v. Kerner*, 404 U.S. 519 (1972).) Defendant reads *Haines* too broadly. *Haines* stands for the proposition that allegations in pleadings filed by a pro se complainant are held "to less stringent standards" than those applied to pleadings drafted by lawyers. *Haines*, 404 U.S. at 520. It does not provide for modifying hard deadlines imposed by the Federal Rules of Civil Procedure regarding the time for filing post-trial motions.

Accordingly, the Motion is denied as untimely under Rules 50(b) and 59.

Even if the Court reaches the merits of the Motion, it must be denied for the following reasons.

### B. Motion under Rule 50(b)

Under Rule 50(b), "If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 28 days after the entry of judgment . . . the movant may file a *renewed* motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59." Fed. R. Civ. P. 50(b) (emphasis added). As is clear from the foregoing language, a motion under Rule 50(b) is a *renewal* of a motion for judgment as a matter of law that was made before the matter is submitted to the jury. *See* Fed. R. Civ. P. 50(a)-(b). It follows that a Rule 50(b) motion cannot be made on its own, it must follow a Rule 50(a) motion. *Image Tech. Servs., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1212 (9th Cir. 1997) ("We strictly adhere to the requirements of Rule 50(b), which prohibit a party from moving for a judgment as

---

[1] Although the Court is mindful of Defendant's pro se status, Defendant is reminded that even pro se parties are "required to comply with the[] Local Rules, and with the F.R.Civ.P., F.R.Crim.P., F.R.Evid. and F.R.App.P." L.R. 83-2.10.3.

a matter of law after the jury's verdict unless that motion was first presented [before submission to the jury].") (citation omitted).

Defendant does not identify when the prerequisite Rule 50(a) motion was made. Plaintiff states that it cannot find such a motion. The Court is also unable to discern a record of such a motion. Although Defendant cites to the purported point in trial at which time the motion was made, the citation is curious. Not only does the quoted transcript refer to "the government" as a party, but Day 3, Volume IV of the trial transcript in this case makes no such reference. (Reply at 2.) The cited testimony appears to be from a different case. Accordingly, Defendant's Rule 50(b) motion is improper.[2]

### C.    Motion under Rule 59

Defendant does not argue that "the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or [upholding it would result in] a miscarriage of justice." *Molski*, 481 F.3d at 729 (internal quotation marks omitted). Instead, Defendant contends that no reasonable jury could find StrikePoint's client list to be a trade secret because it was created by fraud, and the jury instructions were conflicting because no reasonable jury could find damages for breach of contract while at the same time finding no monetary harm to StrikePoint by virtue of Defendant's use and disclosure of the client list. (Mot. at 2.)

Reviewing the trial record, the Court finds ample evidence to support the jury's finding that the client list was a trade secret. The jury was instructed that in order to be a trade secret, (1) the client list must be secret, (2) the client list must have "actual or potential independent economic value because it was secret", and (3) StrikePoint must have made reasonable efforts to keep the client list secret. (RJN, Ex. C, Jury Instruction No. 20.) As mentioned previously, Defendant's only argument against the jury's trade secret finding is that the client list cannot be a trade secret because it was created by fraud. Defendant fails to support this assertion. Defendant does not cite any evidence corroborating her charge that StrikePoint would not have any of the clients on the protected list but for marketing fraud in procuring those clients by Optioneer. Even if the regulatory action against former Plaintiff Optioneer, LLC ("Optioneer") can be said to have had any influence over the client list, the Court notes that the jury heard evidence regarding the fraud and such fraud occurred before StrikePoint started operating in 2004. Even considering the fact that some of the misleading marketing materials stayed on the website into 2005, many of the affected clients remained clients for several years, long after Optioneer's fraudulent marketing practices were aired. In conclusion, Defendant fails to connect the regulatory action taken against Optioneer with the question of whether StrikePoint's client list qualifies as a trade secret.

---

[2] Similarly, the testimony cited for the point in trial at which Defendant supposedly moved for nonsuit says no such thing. (Reply at 2.) Even if the Court reviews the correct volume numbers for the trial days cited, the Court cannot discern the relevance of the citations proffered by Defendant.

As pointed out by Plaintiff, at trial, the jury heard sufficient testimony about the amount of time, money, and labor Plaintiff expended in developing and maintaining its client list, as well as efforts to keep it secret. (Opp'n at 9, citing RJN Ex. L, Tr. Transcript, March 10, 2009 at 11:24-17:24, 17:25-42:5.) The jury's finding that the client list was a trade secret is not contrary to the weight of the evidence and is in fact well supported by the evidence.

With respect to Defendant's conflicting findings argument, in the case of an apparent conflict, the Court asks whether it can reconcile the apparent inconsistencies. See White v. Ford Motor Co., 312 F.3d 998, 1005 (9th Cir. 2002) (court has a Seventh Amendment duty to harmonize seemingly inconsistent portions of jury verdict if a fair reading allows it).

The jury found that StrikePoint was harmed by the misappropriation of its client list. (RJN Ex. E, at 7 (question 6).) The jury did not award any damages as a result of this harm. (*Id.* (question 8.) The jury also found that StrikePoint was harmed by Defendant's breach of contract. (*Id.* at 3 (question 5).) The jury awarded a total of $102,300 in damages as a result of the harm caused by the breach. (*Id.* at 4 (question 5).) The Court rejects Defendant's argument that these findings are inconsistent. Any seeming inconsistencies can be harmonized by reference to Jury Instruction No. 39 prohibiting duplicate contract and tort damages. In this instruction, the jury was told, "if you decide that StrikePoint has proved both claims against Sabolyk, the same damages that resulted from both claims can be awrded only once." (RJN Ex. C, Jury Instruction No. 39.) The jury's award of monetary damages does not indicate likely juror confusion, but rather suggests that the jurors dutifully followed the duplicate damages instruction as they were asked to do.

Defendant points to the jury's finding that the misappropriation of the client list was not a substantial factor in causing harm to StrikePoint. (Reply at 5.) The Court sees no inconsistency in the jury finding that StrikePoint was harmed by the misappropriation of its client list (RJN Ex. E at 7 (question 6), and the finding that misappropriation was not a *substantial factor* in causing harm to StrikePoint (*id.* (question 7). These distinct questions ask the jury to determine whether there was harm, and if so, the degree of harm. The jury was entitled to find some measure of harm without concluding that misappropriation was a substantial factor in the harm. Identical degrees of harm need not be found in order to substantiate the jury's verdict on the breach of contract and misappropriation of trade secrets claims.

Because the Court has previously dealt with Defendant's argument regarding California Business & Professions Code § 16600, it declines to revisit the issue here. (Doc. No. 113 at 9-10.) In summary, because the client list was found to be a trade secret, Defendant's § 16600 argument fails.

V.     **DISPOSITION**

For the reasons set forth above, the Court hereby DENIES Defendant's Motion. The matter is removed from the Court's November 28, 2011 calendar. The Clerk shall amend the docket to

remove Defendant's counsel and reflect her new pro se status.

   The Clerk shall serve this minute order on all parties to the action, including Defendant Sabolyk at the address indicated in her moving papers.